## HENRY S. SOLOMON AND ANDREW DOTT *v.* THOMAS MAGUIRE.

EXECUTION ON JUDGMENT AFTER LAPSE OF FIVE YEARS.—An execution could not issue on a judgment under the two hundred and fourteenth section of the Practice Act before its repeal in 1861, after the lapse of five years from its entry, unless ordered to issue by the Court, after it had been judicially ascertained and found as a fact that the judgment, or some part thereof, remained unsatisfied and due.

ORDER OF REFERENCE—WHAT IT SUBMITS TO THE REFEREE.—A reference, with directions to the referee to take proofs concerning the confession of a judgment by the defendant, and the judgment roll in the case, and whether the same was filed in the Clerk's office, and to report the testimony, with a finding of facts and a judgment, does not submit to the referee the question as to what amount, if any, is still unpaid on the judgment.

FINDING NECESSARY TO SUPPORT AN ORDER FOR EXECUTION TO ISSUE.—A finding of facts by a referee that an alleged judgment more than five years old was properly entered, and is a good and valid judgment, does not support a judgment reported by him, that the plaintiffs have execution on the judgment.

EFFECT OF ORDER CONFIRMING REPORT OF REFEREE.—Where a referee reported as facts the existence and validity of a judgment more than five years old, and also reported a judgment that execution issue on the same, but stated that he had not passed on the question whether the judgment had been paid by an alleged accord and satisfaction ; *Held*, that an order of Court confirming the report of the referee does not authorize the issuance of an execution on the judgment.

PERIOD DURING WHICH EXECUTION IS STAYED. — The period during which an execution has been stayed by an order of Court is not to be excluded from the five years, after the lapse of which an order of Court was necessary to obtain an execution.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the 26th day of April, 1852, Thomas Maguire, the respondent, filed a confession of judgment in the District Court of the Fourth Judicial District, in favor of Henry S. Solomon and Andrew Dott, appellants, for the sum of nineteen thousand four hundred and fifty-five dollars and twenty-two cents, and William Andrews, James Donahue, George Hubbard, and Thomas Dennis, for various sums each, amounting in the aggregate, with the amount in favor of Solomon & Dott, to some thirty-eight thousand dollars, and on the same day the judgment was duly entered up by the Clerk. On the 4th day of June, 1855, an execution on the judgment was issued for the amount due Solomon & Dott, and on the same day, on motion of Maguire, an order was made by the Judge for the plaintiffs to show cause why the execution should not be set aside and the judgment satisfied, and that until the argument and decision, all proceedings on the execution be stayed. June 16th, 1855, an order was made by the Court, staying all executions on the judgment perpetually, with leave to plaintiffs to move the Court to vacate the order. The judgment roll had been lost at the time of the motions made in 1860, mentioned in the opinion of the Court.

The judgment as originally entered gave to the plaintiffs a lien on the Jenny Lind Theater and Parker House in San Francisco, and respondent Maguire claimed and offered evidence in support of the claim that in July, 1852, he sold said property to the City of San Francisco, and that the plaintiffs agreed to receive and did receive from him sixty-five per cent of the amount of their judgment in scrip of San Francisco, in full accord and satisfaction of the same. The question of accord and satisfaction is not passed on by the Court.

After the report of the referee had been confirmed, and on the 11th day of February, 1863, an execution was issued on the judgment in favor of Solomon & Dott, and on the 23d day of March, 1863, on motion of Maguire, an order was made by the Court setting aside the execution. From this order Solomon & Dott appealed.

The other facts are stated in the opinion of the Court.

*J. W. Winans*, for Appellant, contended that the determination of the referee that the judgment was regular and should not be vacated, involved as an unavoidable conclusion that plaintiffs were entitled to an execution, inasmuch as the reference was double, and involved the two questions, whether defendant was entitled to have the judgment vacated, and whether plaintiff was entitled to an execution.

He also argued that the order of the District Court, confirming the report of the referee and his judgment, rendered the referee's judgment a judgment of the District Court, and cited Voorhies' Code, Ed. 1864, p. 524 ; *Catskill Bank* v. *Sanford*, 4 How. P. 106 ; *Field* v. *Paulding*, 1 Hilton N. Y. Com. Pl. 189.

*E. R. Carpentier*, and *Byrne & Freelon*, argued that under the two hundred and fourteenth section of the Practice Act an execution could issue only upon the establishment of the fact that the judgment, or some part of it, remained unpaid, and that the report of the referee had not found that fact or passed on the question.

By the Court, SANDERSON, C. J.

In view of the conclusion to which we have come upon the question as to whether the District Court in fact ordered the execution, set aside by the order from which this appeal is taken, to be issued, it becomes unnecessary to notice the other questions so ably and elaborately argued by counsel.

The execution, as admitted on all sides, so far as the proceedings had before the Court for the purpose of obtaining it are concerned, could not issue except by virtue of an order of the Court made in pursuance of the two hundred and fourteenth section of the Practice Act, since repealed. Under that section, it was necessary to make it appear to the satisfaction of the Court that some portion of the judgment remained unsatisfied. That was a fact necessary to be judicially ascertained and found before an order allowing an exe-

cution to go could be regularly entered. We are of the opinion that this fact never was ascertained, and that no order allowing the execution to go was ever made. The facts bearing upon this branch of the case are substantially as follows:

### Order of reference.

On the 14th day of December, 1860, the plaintiffs notified the defendant that they would, on the 22d day of the same month, move the Court for an order vacating the orders of the 4th and 16th of June, 1855, staying the execution then out and all further executions or proceedings upon the judgment, and also for an order allowing an execution to be issued, and on the 26th of January, 1861, the Court made the following order:

" In this cause, the plaintiffs having moved for leave to issue execution upon the judgment herein, and the defendant having moved for an order vacating the judgment herein, and the parties appearing by their respective attorneys, it is ordered that this cause be, and the same is hereby, referred to L. Aldrich as sole referee to take proofs concerning the confession of judgment by the defendant herein and the judgment roll in this cause, and whether the same were actually filed in the Clerk's office of this Court, and to report the testimony with a finding of facts to this Court."

On the 8th day of April, 1861, in pursuance of a stipulation to that effect, the foregoing order was amended " so as to extend the reference to all parties plaintiff and to authorize him (the referee) to render judgment on his finding."

It is proper to remark here that the ground of the defendant's motion to vacate the judgment was, first, the alleged invalidity of the judgment, and second, an alleged accord and satisfaction by the payment and receipt of certain scrip of the City and County of San Francisco ; it being contended on the part of the defendant that said scrip, though of less value than the face of the judgment, was received by the plaintiffs in full

satisfaction, and on the part of the plaintiffs that it was received only in part payment.

Taking the two motions together, the following principal questions were presented for the decision of the Court : First, the existence and validity of the judgment in question ; and second, if valid, the amount, if any still due thereon and unpaid, in which latter question, of course, was involved the question of accord and satisfaction.

It is claimed on the part of appellants that all these questions were submitted to the referee and passed upon by him. On the part of the respondent it is claimed that the question as to what amount, if any, was still unpaid, was not submitted to nor passed upon by him.

It must be confessed that the language of the order of reference is not altogether free from ambiguity, and it is quite clear that a pleading equally as defective would be held bad on demurrer. It is clear, however, upon inspection, that the order, as first made, did not embrace the question as to whether the judgment had been fully satisfied, and, if not, how much was still due. Within the language there used only the questions as to the existence and validity of the judgment are embraced. The language is " to take proofs concerning the confession of judgment * * * and the judgment roll, * * * and whether the same were actually filed in the Clerk's office." In view of the fact that the judgment roll, if there ever was one, consisting of the statement in writing authorizing the entry of judgment with the judgment indorsed thereon, (Section 375 of the Practice Act,) was missing from the Clerk's office, and could not be found, the meaning and scope of the order thus far is obvious. It was to ascertain whether the judgment in the Clerk's register, which on its face, purported to be a judgment by confession, made in open Court by some one as the attorney of the defendant, and not by the defendant in person, had really and in fact been confessed in accordance with the provisions of the three hundred and seventy-fifth section of the Practice Act. So far the order is plain ; what change, if

any, was made by the amendatory order? The stipulation upon which the order was made is in these words:

"It is stipulated and agreed that the referee, L. Aldrich, make out a judgment on his finding in the matter referred to him in this action, and that the reference extend to all the parties plaintiff herein."

The amendatory order followed the language of the stipulation. Turn the order end for end and it will read thus: "The reference heretofore made is extended to all the parties plaintiff, and the referee is authorized to report a judgment on his finding."

By this language the power of the referee is enlarged and the number of parties plaintiff to the reference is increased, but the subject matter of the reference remains the same, being neither enlarged nor diminished; on the contrary, the language of the stipulation, as to the subject matter is, "in the matter referred to him;" that is to say, the matter specified in the order already made. The additional power given is to report a judgment. To the first order, as appears from the record, the appellants Solomon & Dott were the only parties plaintiff; but to the judgment, concerning which the reference was being ordered, there were five other plaintiffs, and the amendatory order makes them parties also to the reference. And such, in our judgment, was the full effect of that order, which is made further apparent by comparing the title of the action as given in the first order with the titles given in the stipulation and last order. In the first the title is: "*Solomon & Dott, plaintiffs* v. *Thomas Maguire, defendant;*" while in the last two it is: "*Solomon & Dott, Andrews et al., plaintiffs* v. *Thomas Maguire, defendant.*" Doubtless this last consideration, standing alone, would be entitled to but little weight, but when viewed in connection with what we have previously said it serves, at least in a measure, to fortify our conclusion as to the scope and extent of the orders in question.

Our conclusion then, thus far, is that the claim of the appellants to the effect that the whole subject matter embraced in both motions—the motion of the defendant to vacate the judgment, and the motion of the plaintiffs for leave to issue execution—was embraced in the order of reference, cannot be sustained by any fair and reasonable interpretation of the language employed. If such was the intention of the parties they certainly failed to have it incorporated in their stipulation or in the order of the Court.

*Report of referee.*

We come now to the report of the referee, which consists of eight findings of distinct facts or propositions, followed by a judgment to the effect that the order of the 4th of June, 1855, staying proceedings on the judgment, be set aside and that Solomon & Dott have execution on the judgment for the full amount due them by its terms less five eighths thereof with interest, etc., terminating with a statement in the following words:

" As a part of this report the referee desires to state that he has not passed upon the question of settlement of the judgment," (thereby meaning, doubtless, the accord and satisfaction alleged by defendant, including of course the question whether there was anything still unpaid,) it being understood by him that this question is not embraced by the motions referred. Thus coming to the same conclusion which we have announced as to the extent and scope of the order of reference.

Without stating what facts were found by the referee, it is sufficient for our purpose to say that he did not find that there had been an accord and satisfaction of the judgment, nor that there was still unpaid any part thereof. All the facts found relate to the existence and validity of the judgment, and are substantially summed up in the eighth and last finding, which is to the effect that the judgment is a good and valid judgment. Accompanying the report is the testimony upon which it

was based—consisting of affidavits, depositions, executions and judgment, and docket entries from the Clerk's office.

Nothing can be clearer than that the facts found by the referee do not support the judgment reported by him.

The report of the referee was filed on the 11th of April, 1861. On the same day plaintiffs notified the defendant that on the 13th of the same month they would make a motion in open Court "for a confirmation of the report of the referee filed herein on this day, and for leave to issue execution upon the judgment therein referred to, and also for an order vacating the order of the Court staying execution."

*Order of Court on report of referee.*

On the 13th the defendant filed certain exceptions to the report. On the 20th the report and exceptions were submitted to the Court for its consideration and taken under advisement. On the 18th of May following the Court made the following order:

"This cause, heretofore submitted to the Court for decision upon the report of the referee heretofore appointed herein, and the judgment reported by him having been duly considered, it is this day ordered that said report and judgment be and the same are hereby confirmed."

No order was made directing the judgment reported by the referee to be entered as the judgment of the Court, nor in fact was it ever so entered. Nor was there any special order in terms vacating the order of the 11th of June, 1855, and allowing execution to go, ever in fact made or entered; nor did the Court ever in any form determine the question left open by the report of the referee, as to whether there was anything still unpaid on the judgment, which must necessarily have been done before an order for an execution could have been regularly made; and all this in the face of the motion of counsel in which those special orders were specifically embraced. The order of confirmation neither took from nor added to the

legal force and effect of the report of the referee; but, on the contrary, it left every question precisely as it stood in the report. *Qui confirmat nihil dat.* What was left undetermined by the referee was left undetermined by the Court. If there was any infirmity in the report, the Court confirmed that infirmity, and thereby perpetuated it. If by the report of the referee any question involved in the two motions—the motion of the defendant to vacate the judgment, and the motion of the plaintiffs for an execution—was reserved for future determination, such portion of the report was as much confirmed by the order of the Court as any other, and such question was as much reserved for future consideration after as before the order of confirmation. For the purpose, then, of ascertaining what was really determined by the Court, we are compelled to return to the report of the referee, upon which our views, in the respect named, have been already intimated.

It will not do to say that the referee decided that there was a balance due on the judgment, and that the plaintiffs were entitled to an execution therefor, merely because he reported a judgment to that effect, because his report shows upon its face that he did not so decide, but, on the contrary, left the question open and reserved for further consideration for the reason that under the construction put upon the order of reference by him, as he himself states, that question was not embraced in the order, in which respect we have already sustained the view taken by him. Had this part of the report been omitted, the question before us would have assumed a very different complexion. Then the judgment of the referee would have stood upon the record unqualified and unexplained, which would have been the ordinary case of a judgment unsupported and unwarranted by the facts found, but binding and valid until reversed on appeal, and the presumption would be that the referee had passed upon the whole matter embraced in his judgment; but here that presumption cannot be indulged, because it is met at the threshold and overcome by the express terms of the report. How can this Court say that a certain matter has passed into judgment when the paper relied on for

the purpose of establishing that proposition denies it in express terms? To do so would be to allow bald presumptions to overcome admitted facts.

For the purpose of determining what the referee decided we must look at his entire report, and cannot limit our view to detached portions isolated from the residue. Thus viewed the judgment reported by him becomes a conditional judgment, or, in other words, the clause in his report to the effect that he has not passed upon the question as to whether there is anything still unpaid operates as a proviso to the judgment, and his report and judgment might, therefore, be paraphrased thus: "The judgment in question was at and from the time of its rendition a legal and valid judgment, and the order heretofore made staying execution thereon ought to be vacated and the plaintiffs allowed to take their execution, provided the Court shall determine that the city scrip admitted to have been received thereon was not so received in full accord and satisfaction, upon which point I express no opinion."

The result to which the foregoing reasoning brings us is that the execution issued on the 11th of February, 1863, and quashed by the order of the Court from which this appeal is taken, was not issued by virtue of any order of the Court made under the two hundred and fourteenth section of the Practice Act.

*Execution on a judgment when there has been an order of the Court staying execution.*

It is however, insisted that the right of the plaintiffs to that execution does not depend entirely upon the proceedings, whether valid or invalid, taken under the two hundred and fourteenth section; but that they were entitled to it under the two hundred and ninth section, which provides that a party in whose favor judgment has been rendered may have his execution thereon at any time within five years thereafter. This point is grounded upon the idea that the time during which the order of the 4th of June, 1855, staying execution on the judgment was in force, constitutes no part of the five

years designated as a limit upon the plaintiffs' right to an execution. It is true that if the time during which the order of the 4th of June, 1855, was in force is to be excluded from the computation of the five years stated in the two hundred and ninth section, the execution of the 11th of February, 1863, was issued within the five years there specified.

Admitting, for the sake of the argument, that the time during which execution on the judgment was stayed is not to be computed as a part of the five years specified in the two hundred and ninth section, will counsel claim that even then the plaintiffs could have their execution by simply calling for it at the Clerk's office? On the contrary, would it not be necessary even in such a case to apply to the Court for the execution? Who is to determine whether there has been any valid stay in such a case? Can the Clerk do it, or must it be done in some form by the Court?

But independent of these questions, there is nothing in the Practice Act to the effect that the time during which the plaintiff is stayed from issuing execution shall not constitute a part of the five years to which he is limited by the two hundred and ninth section. The only provision squinting in that direction is found in the Statute of Limitations, section twenty-seven, but that applies by its terms only to an action upon the judgment; and had the plaintiffs sued upon their judgment, it is possible that the point in question would have been available.

But counsel undertake to sustain their position by analogical reasoning (always more or less unsafe and inconclusive) and the known facts upon which the reasoning is based are drawn from the case of *Dewey* v. *Latson*, 6 Cal. 134. It is sufficient to say that the case of *Dewey* v. *Latson* is of very doubtful logic. It is true that we followed the rule in that case, in *Englund* v. *Lewis*, 25 Cal. 352, but we did so solely upon the ground of *stare decisis;* and we are not disposed to extend the doctrine of that case beyond the precise question there determined.

Judgment affirmed.

Mr. Justice RHODES expressed no opinion.