---

## Case No. 1,746.

### In re BOYD.

[4 Sawy. 262; 16 N. B. R. 137, 204; 9 Chi. Leg. News, 385; 10 Chi. Leg. News, 1; 6 Am. Law Rec. 311; 4 Law & Eq. Rep. 488.] [1]

District Court, D. Oregon, July 24, 1877.

Circuit Court, D. Oregon. Sept. 4, 1877.

LIEN OF JUDGMENT—DOCKET ENTRY.

1. At common law a judgment was not a lien upon real property: but after the statute of Westm. 2, c. 18, allowed the creditor to take a moiety of the debtor's land upon an elegit, and hold the same until the rents and profits satisfied the debt, it was said that a judgment was such a lien; but even then it could only be made effectual by a levy, which took effect by relation from the entry of the judgment.

2. The lien given by section 266 of the Oregon Civil Code upon the docket of a judgment arises from the docketing and not the judg-

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 16 N. B. R. 204, 10 Chi. Leg. News. 1, 6 Am. Law Rec. 311, and 4 Law & Eq. Rep. 488, contain only a partial report.

ment; it is a strict legal right, and must stand or fall by the statute which gives it. [Cited in Re Estes, 3 Fed. 142.]

3. The docket entry is not a part of the judicial proceeding, which ends with the entry of judgment, and therefore such entry cannot be referred to for the purpose of supplying omissions or explaining ambiguities in the docket; the latter must be complete in itself. But the whole entry of the docket is to be looked to, and not merely a single item of it, and if from the whole the amount and date of the judgment, the parties to it and the court in which it was rendered appear, the entry will be held sufficient.

4. What should be entered on docket under head, "Amount of Judgment."

5. A judgment which by its terms cannot be enforced against the property of a party cannot become a lien thereon.

In bankruptcy.

John Catlin, for assignee.

William A. Effinger and G. W. Yocum, for creditors.

DEADY, District Judge. The questions arising upon the objections to these proofs of debt were heard and submitted together, and will be so disposed of.

On March 2, 1876, Ira Goodnough obtained judgment in the circuit court of the state, for the county of Multnomah, against said bankrupt and A. H. Johnson, for the sum of $7875 in gold coin, with interest on $5500 of the same from January 5, 1876, at one per centum per month in like coin, and $14.80 costs and disbursements. Said judgment was given upon a promissory note made by said bankrupt and Johnson, the latter being in fact a surety thereon. On the same day this judgment was given an entry was made in the "judgment docket" of said circuit court, under appropriate heads, of the date of said judgment, the names of the parties thereto, the date of such entry and under the head of "Amount of Judgment," the following: "Costs, 14.80; face, 7875.00," without any dollar mark or other sign or word to signify or indicate what was the denomination of these figures or what they represented. The entry also contains a head just following the last named, entitled "Rate of interest," under which is written the word "Coin." On the right hand of the docket are three columns, headed respectively, "Appeals, When Taken;" "Judgment of Appellate Court;" and "Satisfaction, When Entered," as provided in section 562 of the Code of Civil Procedure. Under these heads and across these columns is written: "Int. on $7500 part thereof at 1 per cent. per mo. from Jan. 5, 1876." On March 3, 1876, Boyd filed his petition in bankruptcy in this court, upon which he was afterward duly adjudged a bankrupt. On October 4, 1876, Goodnough proved said judgment as a secured debt against Boyd's estate, claiming therein to have a lien, by virtue of the docketing of said judgment, upon all the real property of the bankrupt within the county. The assignee objected to said proof

of debt; the objections being: 1. That said judgment was taken and procured in fraud of the bankrupt act; and, 2. That said proof is not sufficient as proof of a secured debt, because said judgment was never duly docketed so as to become a lien upon the bankrupt's property. The creditor answered the objections, and the matter was heard before the register, who found for the creditor upon the first objection and for the assignee upon the second. The question whether the ruling of the register should stand? was then, at the request of counsel, certified into court and argued by counsel.

At common law a judgment for a debt or damages could only be enforced against the goods and chattels and the present profits of the lands of the debtor. But the possession of the lands could not be reached. Afterward the statutes of Westminster 2 (13 Edw. I. c. 18; 2 Co. Inst. 394), gave the creditor the option to take a moiety of the debtor's land upon an elegit, to hold until the rents and profits would satisfy the judgment; and thereupon it was said that the judgment was a lien upon such lands. 3 Bl. Comm. 418; U. S. v. Morrison, 4 Pet. [29 U. S.] 135; Bank of U. S. v. Winston [Case No. 944]; Massingill v. Downs, 7 How. [48 U. S.] 765; Shrew v. Jones [Case No. 12,818]. But this lien only conferred a right to levy upon the land within a year and a day from the rendition of the judgment, to the exclusion of adverse interests therein, acquired subsequently to such judgment; yet when such levy was actually made, it related back to the date of the judgment, so as to exclude all intermediate incumbrances. But subject to this, the judgment debtor had full power to dispose of his property notwithstanding the judgment. The judgment creditor acquired no jus in re, but only a mere power to make his general lien or privilege specific and effectual by an execution and levy upon the property of his debtor. Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 443.

Now, the modern statute lien of a judgment, as provided in sections 266–268 of the Oregon Civil Code, is altogether different from this. In the latter case, the lien arises not from the judgment, but the docket thereof. Without the entry in the docket there is no lien. Neither is this statute lien contingent upon the issuing of an execution and a levy. It is absolute, even against a conveyance of the same premises by the judgment debtor. Being a creature of the statute, and not an incident or consequence of the judgment, its existence and validity depend upon a docket entry in conformity with the statute. It is a strict legal right or advantage, and must stand or fall by the statute which gives it. Miama Export Co. v. Turpin, 3 Ohio, 514; Douglas v. Huston, 6 Ohio, 162; Buchan v. Sumner, 2 Barb. Ch. 195; Isaac v. Swift, 10 Cal. 81; Ackley v. Chamberlain, 16 Cal. 183; Bowman v. Norton, Id. 220. True, there must be a valid judgment behind

the docket, or it will be of no avail. But nevertheless, the docket is no part of the judgment or action in which it was given. The docket may be made in every county in the state, and a lien thereby created upon all the lands of the judgment debtor therein. The judicial proceeding which commences with the filing of the complaint, ends with the entry of judgment therein. The docketing of the same is something apart and collateral. It is the ministerial act of the clerk (In re Worthington [Case No. 18,051]), and may, if the law should so provide, be as well done in the office of a recorder or other place where a record of deeds and other transactions affecting real property is made and preserved, as in the clerk's office. Therefore, a defective, ambiguous or insufficient docket cannot be aided by a reference to the judgment or other proceedings in the action. To create the lien, the docket must be complete in itself, must impart all the information which the statute contemplates, without reference to any proceeding which has gone before. Neither is it a mere index or notice to look elsewhere. But it is an independent record of particular facts, authorized for the special purpose of creating and fastening a lien upon the real property of the judgment debtor against all parties subsequent in interest, and therefore must be complete in itself, or it is without effect. Nor is the entry in the docket intended to be a mere notice of an existing and antecedent fact—the judgment. True, the entry must contain certain facts, which presuppose a corresponding judgment. But the direct and ultimate purpose of the entry is not to give notice of the judgment, but to produce a certain legal effect, to wit: a lien upon the real property of the judgment debtor within the county. Therefore, the authorities cited by the counsel for the creditor: Fowler v. Doyle, 16 Iowa, 534; Delavan v. Pratt, 19 Iowa, 431; Markham v. Buckingham, 21 Iowa, 496; and Carr v. Anderson, 24 Miss. 188, which hold that when the judgment entry is obscure or imperfect it may be read in the light of the pleadings and prior proceedings in the case, are not in point. Besides, some of these cases at least trench upon if they do not belong to the class which are said to "make bad precedents," and to be "the quicksands of the law."

Conceding then that this docket entry must stand or fall by itself, it is insufficient upon both reason and authority. The amount of the judgment—the thing, number or value of that which the plaintiff is thereby shown to be entitled to recover of or from the defendant therein—does not appear. This is one of the essentials of the entry. The figures under the head: "Amount of Judgment," 14.80 and 7875.00, do not indicate anything but abstract numbers. As was well said by Mr. Justice Sawyer, upon a similar question in People v. San Francisco Savings Union, 31 Cal. 136: "They are simply numerals—'barren figures'—that are as often employed to indicate anything else that may be numbered as dollars; or if money is indicated, the denominations may be either eagles, dollars, cents or mills." To the same effect is the ruling in Hurlbutt v. Butenop, 27 Cal. 56; Tilton v. Oregon C. M. R. Co. [Case No. 14,055]; Lawrence v. Fast, 20 Ill. 341; and Lane v. Bommelmann, 21 Ill. 147. In the last two cases it was held that a judgment for taxes upon an assessment which, in the valuation column, contained only abstract numbers, without any mark or word to indicate whether they were intended for dollars, cents or mills, was void for uncertainty. The ruling in these cases was followed by the supreme court of the United States in Woods v. Freeman, 1 Wall. [68 U. S.] 399, a case, it is true, from Illinois, but without a doubt or suggestion as to its correctness. In Buchan v. Sumner, supra, it was held that the docket of a judgment in which the Christian name of the judgment debtor was used for the surname and vice versa, was therefore void and of no effect.

Again, it appearing from the proof of debt that this judgment was given for gold coin, it would seem that it should have been so docketed. In a very material sense, the "amount" or value of a judgment depends upon the kind of money for which it is given and with which it may be satisfied. This entry contains a column and head not authorized by the statute, namely: "Rate of Interest," under which the word "Coin" is written, but nothing concerning the rate of interest. The interest which a judgment bears is a part of the amount of it, and in time may become the most material part of it, and therefore it seems that the rate and kind of money in which it is payable are proper, if not essential parts of the docket-entry, under the head: "Amount of Judgment." In providing for the docketing of a judgment, the Code (§ 266) does not specify what particulars it shall contain. But section 562 of the same, which describes the "judgment docket" itself, provides into how many columns the pages of the same shall be divided, and how such columns shall be headed. One of these is: "Amount of Judgment." Under this head it would seem, from the very nature of the case and the prime purpose of the proceeding, there ought to be stated every fact which enters into the value or amount of the judgment, and thereby affects the extent of the lien, which it is the sole object of the entry to create and preserve. Of these facts, in case of a money judgment, the most material are the number and denomination or kind of moneys for which the judgment is given, and the rate of interest and kind of money in which it is payable.

It has been suggested that the entry running across the last three columns of the docket: "Int. on $7500 part thereof at 1 per cent. per mo. from Jan. 5, 1876," reflects

light upon the figures in the column headed "Amount of Judgment," and shows that they were intended to indicate dollars. Assuming that this entry is a legal and proper statement of the fact that 7500 dollars is a "part thereof," the question recurs, a part of what —the judgment? Let the answer be in the affirmative; still it does not show what part of the judgment—whether a third, a fourth or a fifth. The whole of an amount cannot be inferred or ascertained from a part being given, unless the proportion which such part bears to the whole is also given. Because 7500 dollars is said to be a part of a judgment, the whole amount of which is represented by the abstract numerals 14.80 and 7875.00, it by no means follows that the amount of such judgment is only 7875 dollars rather than as many eagles, or any other known denomination of money greater than dollars. If the entry had said 7500 cents was a part of the judgment, by this mode of reasoning it would follow that the whole judgment was only 7875 cents..

But another conclusive answer to this suggestion is found in the fact that this entry as to the "part thereof" is unauthorized and void, and therefore of no effect. The facts concerning the "amount" of the judgment must appear in the column designated for that purpose. The judgment, instead of being given, as it should have been, for the principal and interest then due upon the note, with provision that that sum should be recovered with the rate of interest mentioned in the note, seems to have been given for such sum, and then provision was made that "a part thereof"—$7500—should bear interest from a time anterior to the date of the judgment, to wit: the date of the note; and hence this entry in the docket. A judgment is properly given for the debt and damages, the principal and interest, the whole sum then due. This is a merger of the debt, and thereafter such judgment bears interest or not and at such rate as the statute may provide. Clark v. Goodwin, 14 Mass. 239; Otis v. Wood, 3 Wend. 498.

In considering the question of the sufficiency of this docket, it must be borne in mind that there is no equity upon the part of the creditor which suggests or requires that the court should strain a point to uphold this alleged lien. The lien acquired by a judgment creditor upon the proper docketing of his judgment is an advantage—a preference over other creditors. It is a strict legal right, and must stand or fall by the statute which gives it. This is a controversy between a creditor seeking to establish a legal preference and the assignee representing other creditors equally as meritorious as he. In such a controversy, there are no equities in favor of the alleged preference, but the contrary. The question, whether the judgment is invalid because taken contrary to the bankrupt act, was not discussed by counsel for the assignee, and the ruling of

the register upon this point is affirmed, pro forma. If the judgment is not a lien the creditor obtained no preference by it, and therefore it cannot be said to be obnoxious to the act.

On October 20, 1876, the Bank of British Columbia proved, as a secured debt against Boyd's estate, a judgment given against said bankrupt and Johnson, in the circuit court aforesaid, on March 2, 1876, for the sum of $5000 in gold coin, with interest thereon at the rate of one per cent. per month from January 27, 1876, and $14.80 costs and disbursements, and alleged to have been docketed at the same time. The same proceedings took place before the register in regard to this proof as in that of Goodnough's, with the same results. An additional objection, however, was made by the assignee to this proof—that the judgment in favor of the bank was not such as could be enforced against Boyd or his individual property. The judgment in question was given for want of an answer, and provides that the bank recover of both Boyd and Johnson the sum stated, and then provides that "the plaintiff do have execution against the property of said Johnson, and against the joint property of said Boyd and Johnson, to enforce this judgment."

A judgment entry is sufficient without any provision concerning its enforcement, which is regulated by law, unless it be in the case of defendants jointly indebted but not all served, as provided in section 59 of the Code. In this case, both defendants were served, though the entry would indicate that only Johnson was. But it seems reasonable that any restriction or condition that a court may impose upon the enforcement of a judgment, by a provision in the entry of the same, must be taken to be a part of its action in giving the judgment. If the effect is to modify or even nullify the right to recover, it can only be said that so far the court has not given any judgment. A judgment that A. recover $1000 of B., containing a provision that no execution shall issue to enforce the same, may be evidence of a debt, but it is not a judgment that can become a lien upon the property of B.; because section 266 of the Code does not make any judgment a lien by reason of the docket entry thereof only "during the time an execution may issue thereon." Assuming this to be the law of the case, there is no judgment here against Boyd individually, but only one against Johnson and Boyd. But this cannot be enforced against Boyd individually, and therefore it cannot be made a lien upon his individual property. There being no sufficient proper docket entry of either judgment, neither of them became a lien upon the property of the bankrupt; nor is there any judgment in the case of the bank against the bankrupt, individually. Therefore the proof of the debt by Goodnough is allowed to stand as proof of an

unsecured debt for the full amount of the judgment on the. day of the filing the petition in bankruptcy; and the proof of debt by the bank is allowed to stand as proof of an unsecured debt for the sum due upon its note on the same day

On petition for review in the circuit court, September 4, 1877, Mr. Justice FIELD delivered the following opinion:

I agree with the district judge that the judgment recovered by Goodnough could only become a lien upon the real property of the bankrupt by its entry in the judgment docket in the clerk's office of the county where the property is situated. This lien is the mere creature of the statute, and to its existence the provisions of the statute must be followed in all substantial particulars. The docket must disclose, among other things, the amount [and date][2] of the judgment [and the court in which it was][3] rendered. Mere numerals, without any indication that they represent dollars, or other denomination of money, are not sufficient. Any omission in this particular cannot be supplied by reference to the record of the judgment. The object of the law is to make the judgment a lien upon the property of the debtor in any county where it is situated; and as such county may be at great distance from the one in which the judgment is rendered, the law contemplates that the docket entry shall impart knowledge of all the facts which a purchaser of the property need ascertain.

But the whole entry of the docket is to be looked to, and not merely a single item of it; and if from the whole the amount and date of the judgment, the parties to it, and the court in which it was rendered appear, the entry will be held sufficient. In this case all the essential particulars are mentioned except one. Neither the word dollars nor the usual mark indicating dollars is used in stating the amount of the judgment. But this omission is supplied by the accompanying entry, which is properly a descriptive part of the judgment, that seven thousand and five hundred dollars of the amount stated as the judgment draws a certain specified interest. The natural and necessary inference is that the balance of the amount expressed by the numerals was also in dollars. In describing the judgment, the statement of the rate of interest which a part of the amount drew was properly made, inasmuch as that exceeded the rate prescribed by statute in the absence of a special agreement upon that subject. It follows that that portion of the decree of the district court which holds that the judgment of Goodnough is not to stand with the assignee as a secured debt, is reversed; and it is ordered that the judgment be taken

as a debt secured by the real property upon which it is a lien.

But as to the judgment recovered by the Bank of British Columbia, the case is different. For although a judgment record cannot be resorted to in order to supply the omissions of a docket entry, it may be examined to test the validity of such entry. Looking at the record of the judgment of the bank, we find that it is restrained from enforcement against the separate property of the bankrupt. It cannot for that reason become a lien upon his separate property by its entry in the docket. The decree of the district court as to that judgment is therefore affirmed.