SAVINGS & TRUST CO. OF CLEVELAND, OHIO, v. BEAR VALLEY IRR. CO. et al.

(Circuit Court, S. D. California.    June 27, 1898.)

No. 659.

1. JUDGMENT LIEN—EXTENSION—PROPERTY IN HANDS OF RECEIVERS.
    The lien created by Code Civ. Proc. Cal. § 674, by filing a transcript of the judgment with the county recorder, is not continued beyond the statutory period of two years by the mere fact that during such period all the judgment debtor's property is in the hands of receivers, under the control of courts having jurisdiction.  And if, during this period, the judgment debtor does not ask permission of the court appointing the receiver to levy his execution, he loses his lien by his own neglect.

2. SAME—EXTENSION BY AGREEMENT.
    The period for which a judgment lien exists by statute cannot be extended by consent or agreement.

Wm. J. Hunsaker, for Savings & Trust Co. of Cleveland.
White & Monroe, for Grant Bros.

ROSS, Circuit Judge.    The bill in this suit, which is brought to foreclose the lien of a certain mortgage or trust deed executed by the Bear Valley Irrigation Company to the complainant, and of certain receiver's certificates issued pursuant to orders of this court made in the preceding case of James Gilbert Foster against Bear Valley Irrigation Company, was filed September 16, 1895.    A. A. Grant, L. A. Grant, and John R. Grant, as partners doing business under the firm name of Grant Bros., were made parties defendant to the bill, it being therein alleged that they, with a number of other defendants, had, or claimed to have, an interest in the property constituting the subject of the suit, but which interest or claim it was therein alleged was subsequent and subject to the complainant's liens.    On the 5th day of September, 1896, Grant Bros. filed herein an answer to the bill, and on November 2, 1896, a cross bill, to which they made parties defendant the Savings & Trust Company of Cleveland, Ohio, Bear Valley Irrigation Company, New Bear Valley Irrigation Company, A. G. Hubbard, Arthur Young, J. J. Miller, and W. H. Glass.    The complainant, Savings & Trust Company, A. G. Hubbard, New Bear Valley Irrigation Company, and Arthur Young thereafter filed exceptions to the answer and a demurrer to the cross bill, which have been argued and submitted by the respective counsel, and are now for disposition.    Both the answer and the cross bill assert a lien in favor of Grant Bros. on certain lots of land covered by the original bill, which they claim to be a prior lien to any lien of the complainant.    The lots

of land upon which this lien is asserted are situated in the county of Riverside, Cal., and were so situated at the time of the rendition of the judgment upon which the alleged lien is based. The judgment, which was for $32,030.10 and $13.20 costs, was recovered in a suit brought by Grant Bros. against the Bear Valley Irrigation Company in the superior court of San Bernardino county, Cal. It was duly rendered and entered on the 23d day of December, 1893, and on the same day a duly-certified transcript of the original docket entry of the judgment was filed in the office of the county recorder of the county of Riverside, Cal. This was prior to some of the complainant's alleged liens. In addition to these facts, which appear both by the answer and the cross bill, the latter also alleges: That both at the time of the entry of the judgment and of the recording of the transcript of the docket thereof in Riverside county, the Bear Valley Irrigation Company was, and had long been, the owner in fee of the real property upon which the cross complainants assert their lien. That at the time they acquired theirs there was no other valid lien of any kind upon the lots of land in question except a judgment lien in favor of W. H. Glass and J. J. Miller for the sum of $2,407.46, which, however, has been fully paid and satisfied. That in the month of December, 1893, and prior to the recovery of the cross complainants' judgment, in a suit brought by the Alessandro irrigation district against the Bear Valley Irrigation Company in the superior court of San Bernardino county, a receiver was appointed, who qualified as such, and took possession of all of the property of the Bear Valley Irrigation Company, including that upon which the cross complainants assert their lien. That the receiver so appointed by the superior court of San Bernardino county continued in the possession of all of the property taken by him until some time in the month of March, 1894, when judgment was recovered in this court by James Gilbert Foster against the Bear Valley Irrigation Company in an action then pending herein in which Foster was complainant and the Bear Valley Irrigation Company defendant, after the recovery of which judgment, and upon application of the said judgment creditor made in an action brought by him in this court for that and other purposes, A. P. Maginnis and J. A. Graves were by this court duly appointed receivers of all of the property of the Bear Valley Irrigation Company, and immediately qualified as such receivers, and took possession thereof, including the lots of land upon which the cross complainants assert their lien, and retained possession thereof under the orders of this court until the appointment of a receiver thereof in this case on the 25th day of September, 1895, whereupon all of the property held by Maginnis and Graves as receivers was by order of this court transferred to the receiver in this suit, who has ever since retained possession thereof. That cross complainants were not parties to the suit in the superior court of San Bernardino county, in which a receiver of the property in question was appointed, nor in the case of Foster against the Bear Valley Irrigation Company in this court, in which Maginnis and Graves were appointed receivers. That after the appointment of the latter an effort was made by Arthur Young, and others for whom he was acting, among whom, it is alleged upon information and belief, were

the Savings & Trust Company of Cleveland, Ohio, and the said A. H.
Hubbard, to preserve all of the property of the Bear Valley Irrigation
Company, all of whom, it is alleged, were desirous of purchasing all
liens upon the property which were prior to the mortgage lien of the
Savings & Trust Company. That pursuant to that desire the cross
complainants, on the 13th day of June, 1894, entered into an agree-
ment with Young, which recited the pending litigation against the
Bear Valley Irrigation Company, and that Young was acting for cer-
tain parties, not named, interested in the preservation of the prop-
erty of the Bear Valley Irrigation Company, and was engaged in
forming a new irrigation corporation under the laws of Arizona, with
power to acquire property formerly belonging to the Bear Valley
Irrigation Company, with a capital stock of $4,000,000, in shares of
$100 each, and with power to issue $2,500,000 of its first mortgage
bonds of the denomination of $500 each, bearing interest at the rate
of 6 per cent. per annum, to be secured on all the real property ac-
quired by it; and reciting the ownership by Grant Bros. of a claim
against the Bear Valley Irrigation Company amounting in the aggre-
gate to $32,043.30, and evidenced by a judgment recovered in the su-
perior court of San Bernardino county, Cal., on the 23d day of Decem-
ber, 1893, bearing interest at the rate of 7 per cent. per annum from
that date; and reciting that in consideration of the payment by Young
to Grant Bros. of $10,000 in cash on account of the said judgment
claim, and the further payment thereon within 60 days of a sum suf-
ficient to make, with the $10,000 then paid, 50 per centum of the judg-
ment claim as it should then exist, with interest, and in consideration
of the performance of the promises therein made by Young, Grant
Bros. thereby agreed to assign, sell, and set over to Young "their said
claim, and all the security they now hold for the payment thereof,
when there is organized said new irrigation corporation under the
laws of Arizona, and when said irrigation company shall have be-
come the owner of the real property formerly owned by the defendant
(Bear Valley Irrigation) company, and now in the possession of the
said receivers, and when said new company shall have organized and
executed $2,500,000 of its bonds of the denomination of $500 each,
which bonds shall be numbered from 1 to 5,000, inclusive, and in each
of which bonds it shall be recited that it is one of a series of 5,000
bonds only, of equal denomination, numbered from 1 to 5,000, in-
clusive, and that said 5,000 bonds are secured by a first mortgage on
all the property of said corporation, and has secured the same by such
first mortgage on all the real property acquired by said new cor-
poration, as aforesaid, and has recorded said mortgage in time to
make it a first lien on said property, which mortgage shall recite sub-
stantially that it secures and is a first lien to secure 5,000 bonds only
of the denomination of $500 each, and shall have executed and issued
its capital stock, as aforesaid, on the payment by said Young to the
owners and holders of the claim described herein of an amount of said
bonds of the face value of the balance of said judgment claim as the
same shall stand, with interest, at the date said bonds shall be de-
livered to them, and also of shares of said stock of the face value of
the balance of said judgment claim. That said bonds and stocks,

when said bonds are a first lien on all said property, and when so received by the owners and holders of this claim after the payment of the money herein provided for, and not before, shall be taken and received by them as full payment and satisfaction of said claim, and said owners and holders of this claim will deliver to said Young, after the payment of all the money herein provided for, and not before, and contemporaneously with the reception of said bonds and stock as payment of their claim, all the security held by the owners of the claim, given to insure the payment of said claim. Said Arthur Young, as agent, on his part agrees to use all his endeavors to form said company, and to have said stock and bonds issued as herein contemplated, and binds himself to deliver to the owners and holders of this claim, at the times above mentioned, said amount of shares of stock and said amount of bonds in full payment of said claim. It is further understood that the holders of said claim hereby assent to said judicial sale, subject to their lien; that none of their rights or liens against the property of the defendant (Bear Valley Irrigation) company now in the hands of said receivers shall be impaired by this agreement or by said sale until they are paid said money and said stock and bonds as hereinbefore provided for, in which case their claim against said company and property thereof shall be extinguished."

The cross bill alleges, upon information and belief, that the agreement just stated was made by Young at the suggestion and for the benefit of the Savings & Trust Company of Cleveland, Ohio, and of Hubbard; that the moneys provided for by the agreement were paid to the cross complainants by Young, and that in pursuance of the agreement Young and the parties whom he represented did form a new irrigation corporation under the laws of Arizona, with power to acquire property belonging to the Bear Valley Irrigation Company, with a capital stock of $4,000,000, in shares of $100 each, which corporation so formed was the defendant New Bear Valley Irrigation Company, which latter company became the owner by conveyance from Young, made on the 14th day of December, 1894, of all the real property formerly owned by the Bear Valley Irrigation Company, and which was in the possession of Maginnis and Graves, as receivers, on the 13th day of June, 1894. The cross bill also alleges that prior to the filing of the original bill in this suit Young assigned all his interest in the agreement with the cross complainants to a joint committee consisting of the said A. G. Hubbard, Arthur Young, and one —— Sterling; and, upon information and belief, that the said joint committee represented the Savings & Trust Company of Cleveland, Ohio, and received the assignment for the benefit of that company, and to enable it to obtain all the outstanding liens against the property which had formerly belonged to the Bear Valley Irrigation Company, and that the Savings & Trust Company, prior to the filing of the bill herein, became, and ever since has been, the owner of that contract. The cross bill further alleges that Young and his assignees, and the Savings & Trust Company of Cleveland, Ohio, and the New Bear Valley Irrigation Company have failed and refused to cause the latter to execute the bonds or stock provided for by the agreement between Young and the cross complainants, and have failed and

refused to execute the mortgage provided for by that contract. It is further alleged in the cross bill that the Savings & Trust Company control the New Bear Valley Irrigation Company, and are the owners of all of its stock, or control the same, and that the purpose of the organization of the last-mentioned company was the acquiring of the property of the Bear Valley Irrigation Company when sold under the decree of this court. The cross bill further alleges that there has been no time since the cross complainants recovered their judgment against the Bear Valley Irrigation Company when they could have levied an execution issued thereon upon any of the property in question, "on account of the same being in the possession of receivers duly appointed by courts of competent jurisdiction." In addition to asking for answers to certain interrogatories propounded, the prayer is that the judgment recovered by the cross complainants against the Bear Valley Irrigation Company be decreed to be a first lien upon the lots of land situated in Riverside county, and paramount to any lien of the complainant, and that the amount remaining due upon that judgment be directed to be paid to the cross complainants out of any proceeds realized by the sale of the property.

The only substantial difference, if any, between the answer and cross bill consists in the averments of the latter respecting the agreement between Young and the cross complainants. It is very clear that, so far as appears, the only lien ever held by the cross complainants upon any of the real property in question grew out of the judgment recovered by them against the Bear Valley Irrigation Company in the superior court of San Bernardino county. That lien was given by the statute of the state, and by that only. The statute reads:

"A transcript of the original docket, certified by the clerk, may be filed with the recorder of any other county, and from the time of the filing the judgment becomes a lien upon all the real property of the judgment debtor not exempt from execution, in such county, owned by him at the time, or which he may afterwards, and before the lien expires, acquire. The lien continues for two years unless the judgment be previously satisfied." Code Civ. Proc. Cal. § 674.

The judgment having been rendered and entered in the superior court of San Bernardino county on the 23d day of December, 1893, and a certified copy of the docket entry thereof having been recorded on the same day in the office of the county recorder of the county in which the lands in question are situated, a lien for the amount of the judgment thereupon arose, and attached to the lands in favor of the judgment creditors. Coming into existence December 23, 1893, the two years prescribed by the statute for the continuance of the lien expired prior to the filing of either the cross bill or the answer to the original bill. One of the concluding clauses of the cross bill is, as has been seen, that "there has been no time since the cross complainants recovered their judgment against the Bear Valley Irrigation Company when they could have levied an execution issued thereon upon any of the property in question, on account of the same being in the possession of receivers duly appointed by courts of competent jurisdiction." It is nowhere alleged that the judgment creditors applied at any time during the two years that the statute continued the lien in their favor to any court whose receiver had possession of

the property, for leave to levy an execution on it to satisfy their lien. It certainly cannot be presumed that any court would have withheld from the judgment creditors the benefit of their statutory lien. As was said by the supreme court of California in Petaluma Sav. Bank v. Superior Court, 111 Cal. 488, 497, 44 Pac. 177, 180:

"It is undoubtedly the prevailing doctrine that courts of equity will not permit their receivers to be sued, or property in their possession to be seized or sold, without leave asked and granted; but since the refusal of leave to sue in those tribunals or to enforce the judgments of those courts would in many cases destroy or impair rights which the court appointing the receiver has no power to conserve, it is a boast of such courts that they never refuse leave in a proper case."

What the result of such a refusal would have been need not be considered, since no such application appears to have been made during the life of the lien.

The record shows that several months after the expiration of the statutory period of two years from the acquisition of the cross complainants' lien they applied to this court for leave to proceed to levy upon and sell the lands in question under an execution to be taken out by them upon their judgment against the Bear Valley Irrigation Company. The application was not made until July 23, 1896, and was denied by this court on the ground that the applicants' judgment lien upon the property had expired. It had been lost by their own laches. No opinion was delivered in support of the ruling then made, but, as the same question is again presented in another form, I will proceed to show that the views then held by the court were correct, and must be adhered to.

As the lien relied upon by Grant Bros. is purely a creature of the statute, it is manifest that its scope must be measured by that statute. In Isaac v. Swift, 10 Cal. 71, 81, the supreme court of California, in construing the provision of the old practice act of the state, corresponding to the statute now in question, said:

"The section [204] creates the lien of the judgment, and also fixes the period of its continuance. Taking the different portions of the section together, and the intent is clear that the lien should not continue beyond the time specified. The power that creates confines the existence of the thing created within a specified period. The lien itself would not exist without this provision of the statute, and, of course, cannot exist beyond the time expressly stated. We could as well assume the existence of the lien in the first instance without the statute, as to assume its continuance without the statute. It requires express words to create the lien, and it equally requires express words to continue it beyond the time specified. Had the Code simply created the lien without limiting the period of its existence, then we could not presume that any limit was intended. But when a limit is expressly stated, we cannot presume a continuance beyond it. The rule that confines the lien of the judgment strictly within the two years is the most simple and certain in theory, and the most beneficial in practice. If we hold that the lien of the judgment may be prolonged beyond the period stated by the issue and levy of an execution within the time, then we can fix no definite and certain limits to the continuance of the lien. Once we pass the limits of the statute, we open a door to the most vexatious litigation. The titles to real estate would become uncertain, and the useful end intended to be accomplished by our recording system would, in fact, be defeated. A party wishing to purchase the land of the judgment debtor could not do so with safety without the exercise of extraordinary diligence. The provisions of the Code give the judgment creditor ample protection. He can cause an execution to issue

at any time, and under it the sheriff can advertise and sell within the short period of twenty days. There is, therefore, no reason for allowing him the privilege of delaying the issue of execution until it is too late to sell before the lien expires. It is true that an occasional hard case may arise under the strict rule, but upon the whole it must be productive of the most good."

In Bagley v. Ward, 37 Cal. 121, 133, the court said:

"The doctrine in New York and in this state is that, in order to preserve the priority acquired by the judgment lien, the sale must be made during the statutory period of the lien. Isaac v. Swift, 10 Cal. 81; Roe v. Swart, 5 Cow. 294; Little v. Harvey, 9 Wend. 158; Tufts v. Tufts, 18 Wend. 621; Graff v. Kip, 1 Edw. Ch. 619; Pettit v. Shepherd, 5 Paige, 493. This was so held on the ground that the opposite rule would extend the lien beyond the time mentioned in the statute. It would seem unaccountable that the legislature should have been so particular in fixing the period of the existence of the judgment lien, and that the courts should have been so careful in maintaining it, if, at the same time, the plaintiff might have acquired a lien through the execution that would last for the lifetime of the judgment."

The construction thus put by the highest court of the state upon the state statute on which the judgment lien in question wholly depends for its creation and continuance is binding on the federal courts. Clements v. Berry, 11 How. 398; Ward v. Chamberlain, 2 Black, 430. Moreover, it is in accord with the general rule in respect to such statutes.

In Laidlaw v. Navigation Co., 26 C. C. A. 665, 668, 81 Fed. 876, 879, where a state statute gave a lien, but conditioned the right thereto upon the commencement of an action to enforce it within a certain period, the circuit court of appeals of this circuit said: "Time has thus been made of the essence of the right, and the right is lost if the time is disregarded,"—citing The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, in which latter case the supreme court, in speaking of a right created by statute, said:

"The statutes create a new legal liability, with a right to sue for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all. * * * Time has thus been made of the essence of the right, and the right is lost if the time is disregarded."

In Re Boyd, 4 Sawy. 262, 3 Fed. Cas. 1091 (No. 1,746), where an Oregon statute giving a judgment lien was construed, the court said:

"The lien arises, not from the judgment, but the docket thereof. * * * Being a creature of the statute, and not an incident or consequence of the judgment, its existence and validity depend upon a docket entry in conformity with the statute. It is a strict legal right or advantage, and must stand or fall by the statute which gives it."

In 2 Freem. Judgm. p. 625, that author says:

"The character, extent, and duration of judgment liens are dependent upon the express will of the legislature. Neither the courts nor the parties are regarded as having power to extend them."

See, also, In re Estes, 3 Fed. 142; Bush v. Farris, 18 C. C. A. 315, 71 Fed. 774; Albee v. Curtis, 77 Iowa, 647, 42 N. W. 508; Lakin v. McCormick, 81 Iowa, 548, 46 N. W. 1061; Fur Factory v. Teabout (Iowa) 73 N. W. 875; McAfee v. Reynolds (Ind. Sup.) 28 N. E. 423; 13 Am. & Eng. Enc. Law, 689.

It is contended on behalf of the judgment creditors that, inasmuch as during the entire period of two years immediately following the filing in the office of the recorder of Riverside county of the transcript of the docket entry of their judgment the lands in question were in possession of receivers appointed by this and the superior court of San Bernardino county, the judgment creditors were prevented from enforcing their lien, and that this operated to extend its life; and that, if this be not so, the agreement entered into between the judgment creditors and Young had the same effect. Certain it is that the statute itself makes, in terms, no provision for any extension whatever of the lien thereby given beyond the prescribed two years. It was held by the supreme court of California in an early case—Dewey v. Latson, 6 Cal. 131—that where an appeal was taken from the judgment, and execution thereon stayed by the giving of a sufficient undertaking, thereby precluding the judgment creditor from enforcing his judgment during the pendency of the appeal, the time during which the stay was effective should not be considered in computing the period during which the lien would continue. That case was severely criticised in 2 Freem. Judgm. § 394, as importing, by construction, an exception into the statute not there found; and, while subsequently followed in the same court upon the point directly decided (Englund v. Lewis, 25 Cal. 337; Chapin v. Broder, 16 Cal. 424), the logic of the opinion by which the decision was supported was very much doubted in subsequent cases, and an indisposition expressed to extend the doctrine of it beyond the precise point decided (Solomon v. Maguire, 29 Cal. 227; Barroilhet v. Hathaway, 31 Cal. 395). Accordingly, in Rogers v. Druffel, 46 Cal. 654, the court held that an order enjoining a sale on such an execution does not stop the running of the two-years lien, nor extend the time within which the sale must be made. In the case at bar no appeal appears to have been taken from the judgment recovered by Grant Bros., nor does execution upon their judgment appear to have been in any manner stayed. They made no effort whatever to enforce their lien during its life, but slept upon their rights until they expired by statutory limitation. That being so, it is unnecessary to consider whether, had execution been issued upon the judgment, and levied upon the land during the life of the lien, the latter would have continued after the expiration of the statutory period of two years,—no sale being made within the two years. Nor is the statute in question to be confused with the ordinary statute of limitations, which affects the remedy only. In the statute under consideration, and in others of like nature, the limitation prescribed is an essential part of the right created. The expiration of the limitation therefore extinguishes the right, and does not, like the ordinary statute of limitations, merely affect the remedy. Cochran v. Young, 104 Pa. St. 333; Suggs v. Insurance Co., 71 Tex. 579, 9 S. W. 676; 13 Am. & Eng. Enc. Law, 689. It results, further, from the nature of the lien in question, that it did not admit of extension by consent or agreement of the parties,—much less by agreement with one not a party to it. "A judgment lien," said the supreme court of California in Eby v. Foster, 61 Cal. 287, "must have a commencement. If it exists, its commencement is the day when the judgment was docketed,

for it is by docketing the judgment that the lien is created; and it runs for two years from and after that time. Ackley v. Chamberlain, 16 Cal. 181; Barroilhet v. Hathaway, supra; Rogers v. Druffel, supra; Code Civ. Proc. § 671. And the time must appear by the record, for, as the lien is purely statutory, neither its existence nor commencement can be proved by parol. Racouillat v. Requena, 36 Cal. 651; Norris v. Jackson, 9 Wall. 125." Precisely the same reason equally applies to any other kind of extrinsic proof. Besides, it does not appear from the agreement between Grant Bros. and Young that it was thereby contemplated that the lien of the former should be in any way affected by the agreement. On the contrary, the agreement expressly recites "that none of their [Grant Bros.'] rights or liens against the property of the defendant company now in the hands of said receivers shall be impaired by this agreement or by said sale until they are paid said money and said stock and bonds as hereinbefore provided for, in which case their claim against said company and property thereof shall be extinguished." In their brief, counsel for the cross complainants say:

"We do not care whether the court decides that Grant Bros. now have a lien or not, but we do insist that the court should decide that, having a lien at the time the property was taken possession of by this court, and at the time this court virtually said that Grant Bros. could not satisfy an existing lien, all the liens then existing should be marshaled as they were at that time, and that the complainant should not have a sale in its favor without first paying off these prior liens."

In the first place, this court did not say to Grant Bros. at the time the property was taken into the possession of the court, or at any other time, that they could not satisfy their existing lien. On the contrary, as has been shown, no obstacle was placed by this or any other court, so far as appears, in the way of the enforcement of their lien; and the law admonished them that, if they did not enforce it by the execution of their judgment during the period prescribed for its continuance, the lien would be lost. Having made no effort to protect their rights during the life of the lien, they must suffer the consequences of their own neglect. But, if they had been guilty of no laches, this court is powerless to extend their lien beyond the statutory limit. As was well said by the supreme court of California in Morrow v. Barker (Cal.) 51 Pac. 12: "A court is not authorized to make an exception to relieve from hardship, or to aid inherent equities. * * * It would serve to point an argument to lawmakers, but not to judges, whose sole response must be 'Ita scripta lex.'" See, also, McIver v. Ragan, 2 Wheat. 25; French's Lessee v. Spencer, 21 How. 228; Yturbide's Ex'rs v. U. S., 22 How. 290.

For the reasons stated I think it clear that neither the answer nor the cross bill discloses any interest in Grant Bros. in any of the property in question, for which reason orders will be entered sustaining the exceptions to the answer and the demurrer to the cross bill, with leave to them to amend within the usual time if they shall be so advised.