ISAAC v. SWIFT.

10  71
138  304

The issuing and levy of an execution before the lien of the judgment upon which the execution issued, expires, will not operate to prolong the lien of the judgment beyond the time limited in section 204 of the Code.

The levy and sale must both be made within the period of two years limited by statute.

It required express words of the statute to create the lien, and it equally requires express words to continue it beyond the time specified.

An order of Court made staying all proceedings against a petitioner under the Insolvent Law for a discharge from his debts pending his petition, would not prevent the issuance of an execution on a judgment rendered against the petitioner, and a sale of property under the same, within the time limited for the lien of said judgment.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

This was an action in equity, brought by plaintiff against the defendant, to remove an alleged cloud upon plaintiff's title to a lot of land in the city of Sacramento.

The defendant, in his answer, alleges that a deed from the sheriff of Sacramento county to Allen Cadwalader, and from Cadwalader to plaintiff, to said lot, is a cloud upon defendant's title thereto, and prays that the same may be delivered up, and canceled.

The lot in controversy was originally owned by Hiram Arents, William Arents, and George W. Chedic, and both appellant and respondent derive whatever title they may have from them, under the following circumstances :

On the eleventh of October, 1853, Reynolds & Co. recovered judgment in the District Court of the Sixth Judicial District, against the two Arents and Chedic.

On the twenty-first of November, A. D. 1853, an execution running from this judgment was returned by the sheriff, *nulla bona;* on the fourth day of October, A. D. 1855, an alias execution was issued from this judgment to the sheriff, and by him levied the same day upon the lot in controversy.

On the twentieth day of October, A. D. 1855, the sheriff sold the lot under the execution of the fourth of October, to one Allen Cadwalader.

Six months after the said sale, the sheriff executed his deed of the premises to Cadwalader, who afterwards sold the premises to the appellant, Isaac, who at the commencement of this suit, was in the possession of the premises.

The respondent, Swift, on the eighth day of June, 1854, also recovered judgment in the same Court against the two Arents, Chedic, and one Hardenstein.

On the twenty-sixth of February, A. D. 1856, the sheriff levied upon the lot in controversy, and on the twenty-first day of

March, 1856, sold the same under the execution running from the Swift judgment. Six months after this sale, the sheriff executed to respondent his deed in conformity with his sale.

On the eighth and fourteenth of November, 1854, the members of the firm of H. Arents & Co. filed their petitions in the said District Court for the benefit of the Insolvent Law, and on the said days the Court made the usual statutory order in each case, "notifying the creditors to appear within thirty days, and show cause why the petitioners should not be discharged, and that in the meantime all proceedings against said insolvents should be stayed."

In each of the schedules the lot in controversy appeared as assets.

Respondent had notice of the Reynolds execution, judgment, and sale, under which appellant derives his title.

The Court below decreed that the plaintiff, Isaac, deliver up to the defendant, Swift, to be canceled, the deed to the plaintiff from said Cadwalader for the conveyancing of said premises; and that said deed be canceled upon the record-books of the recorder of Sacramento county; and that the defendant have the possession of said premises, and that a proper writ issue for that purpose; and that defendant recover his costs.

From which decree the plaintiff appealed to this Court.

*Geo. Cadwalader* for Appellant.

In the absence of statutory law, this case would be controlled in favor of appellant by the maxim, *qui prior est tempore, potior est jure*, but as the respondent relies upon the controlling force of the two hundred and fourth section of the Practice Act, it will be necessary to examine its bearing upon the case at bar, to see how far its influence extends towards the destruction of the equitable rule, "that he who is before, first in point of time, is stronger in right."

The section alluded to reads as follows: "Immediately after filing a judgment-roll, the clerk shall make the proper entries of the judgment, under appropriate heads, in the docket kept by him; and from the time the judgment is docketed, it shall become a lien upon all the real property of the judgment-debtor not exempt from execution in the county, owned by him at the time, or which he may afterwards acquire, until the said lien expires. The lien shall continue for two years, unless the judgment be previously satisfied."

The Court below based its decision exclusively on the ground, that as no sale had been made under the Reynolds judgment until after the lapse of two years, the sale passed nothing to the purchaser, and that respondent (although a junior judgment-creditor) causing a sale to be made under his judgment within

the two years, took the beneficial interest in the property, unembarrassed by the Reynolds sale.

In illustration of our argument, that the views of the Court below were clearly erroneous, and that the lien of the Reynolds judgment was preserved by the levy of the execution of the 4th of October, 1855, it will be necessary to glance at the peculiar nature of the lien of a judgment. And though we admit that it owes its existence almost wholly to statutory enactment, yet its character is that of an equitable mortgage analogous to the lien of a vendor or mechanic, and it is not the subject for a harsh and rigid construction. Now, as the lien of a vendor is continued by the institution of proceedings, (within the Statute of Limitations,) and the lien of a mechanic extended by initiatory proceedings for its enforcement, we contend that the lien of a judgment is also preserved and continued by taking the property in execution.

The office of an execution is one of great power, and one which meets with great favor from the Court. It is said in the third volume of Bacon's Abridgment, title Execution, 663, "that an execution being the final process of the law, the actual possession of the thing is in all cases to be favored."

In all cases of the levy of an execution upon personal property sufficient to satisfy the judgment, (and the sufficiency is presumed until the contrary is shown,) it is deemed a satisfaction of the judgment. 3 S. & M., 133; 12 Johnston, 207.

The same rule at common law applied to levies made upon real estate; they were presumed to satisfy the judgment. 2 Bacon's Abridg., Execution, pp. 353, 354; 3 Coke Rep., Part V, p. 87, Blumfield's case.

The same rule was adopted in Cass v. Adams, 3 Ohio, 223, and in McIntosh v. Chew, 1 Blackford R., 289. In Anderson v. Fowler, 3 English R., 388, the Court adopts the doctrine, that when real estate is levied on, it is as completely in the custody of the law as personal estate would be.

The authorities on this point uniformly tend to the conclusion, that upon the levy of an execution upon real estate, the interests seized at once pass to the custody of the law, and thereafter the interests can not lapse or cease, the levy either being a whole or partial satisfaction of the judgment.

The doctrine that the execution holds whatever it seizes, and that the levy consummates the lien of the judgment, is laid down at length by the Supreme Court of the United States, in the case of Washington and Sanders Taylor v. John Doe ex dem. Austin Miller, reported in 13 Howard, pp, 287–295. See, also, the case of Conrad v. The Atlantic Ins. Co., 1 Peters, pp. 442, 443.

The doctrine of the case in 13 Howard, first cited, is unassailable upon principle or authority. At common law, where the lands of a debtor had been taken under the statute of Westmin-

ster the second, known as the Statute of Elegit, the lien of the judgment was preserved by a levy at any time within a year and a day. 3 Bacon's Abridgement, p. 723; 2 Binney, 228; 8 Sergeant & Rawle, 378; 1 Baldwin Cir. C., 276; Martin & Yerger, 374.

The Pennsylvania cases, without exception, under the statute of 1798, giving the judgment-creditor a lien for five years upon the lands of the judgment-debtor, are clear and explicit upon the point that the levy of an execution, while the judgment from which it issues is a lien, will continue and preserve its force and effect.

The leading case is that of the Commonwealth for the use of the Pennocks executors, against McKisson and others, reported in 13 vol. of Sergeant and Rawle, p. 144; also, the cases Bell and Ingram, 2 Barr, 90; Todd v. McCullough, 3 Penrose and Matts, 444.

As late as 1849, the Supreme Court of Missouri, in the case of the Bank of Missouri against Wells and Bates, 12 Missouri, p. 361, held, unanimously, that "if an execution be issued upon a judgment, and levied while the judgment is a lien upon real estate, the effect of this is to continue the lien and its priority until the writ is executed, although before it is executed the time during which the judgment is a lien had elapsed."

This decision was made under a section of the new Code of that State, similar to ours, with the exception that there the lien of a judgment binds real estate for three years.

In Bates v. Gest, 3 McCord, it was decided that property, upon the levy of an execution, passed to the sheriff, and that his interest therein was that of a trustee, vested with the power to convert the seized interests into money.

Nothing is better settled than an execution does not lose its lien by suffering it to lie dormant in the sheriff's hands. Nor will mere indulgence to a debtor cause it to lose its lien. Muir v. Leitch, 7 Barlow, 341; Talbert v. Melton, 7 Sm. & Mar., 9.

On the fourth of October, when the sheriff levied upon the lot, the judgment was then less than two years old by seven days. The property, upon the levy, *eo instanti* passes into the custody of the law; the sheriff is the minister of the law to convert the seized interests into money; the law fixes no time in which the sheriff must sell; that is a matter within his own discretion. Even in cases of a gross abuse of that discretion, the sale is not vitiated or void. Smith v. Randall, 6 Cal. R., 47.

Under our statute, it is made the duty of a sheriff, after a levy upon real estate, to advertise the interests to be sold in a public newspaper. What must the sheriff offer for sale? We say, it can not be anything less than the interest which the judgment-debtor had in the real estate at the time of the levy of the execution.

Now, in the case at bar, he certainly seized the beneficial interest in the lot, and held it for seven days, even under the theory of the Court below. The question then arises, must not the sheriff have the power to sell and convey whatever he had a right to seize and advertise for sale? This conclusion is so absolute and incontrovertible, that we are willing to rest the whole of this case upon this point alone, believing no Court will recognize the possibility of one of its officers occupying the singular position of a fraudulent auctioneer or vendor, offering and selling that, as a minister of the law, which he has no right to sell or convey. *Inutilis labor, et sine fructu, non est effectus legis.*

The case of appellant is, however, sustained by the doctrine of relation.

The sale and all proceedings had after the fourth day of October, A. D. 1855, under the Reynolds execution, take effect by relation to that period. Prescott v. Wright, 6 Mass., 20; Brown v. Maine Bank, 11 Mass., 152; Heywood v. Hildreth, 9 Mass., 392.

The argument of respondent addressed to the third point, is based upon two grounds:

1. That the order made in each of the insolvency cases, on the 8th and 14th of November, 1854, and which continued for thirty days, contained and was only intended as a prohibition of proceedings against the person of the insolvent, and that it did not affect suits against the estates of the insolvents.

2. That the orders mentioned would not be noticed by a Court of Law in the enforcement of a lien, and therefore did not abridge the lien of the Reynolds judgment.

Our answer to the first point is, that the object of our Insolvent Law is as much to restrain one or more creditors from swallowing up the whole proceeds of the insolvent's estate, to the exclusion of the other creditors, and to insure an equitable distribution of the proceeds thereof among all the creditors, as to shield the person of the debtor from legal assaults. If we are correct in this view, then the question presents itself for determination whether the order of the Court, ordering all proceedings against the estate of the insolvent to be stayed for thirty days, prevented our seizure of the property in execution for that period of time. We admit that the proceedings did not destroy our lien, (in that particular our act differs from the English practice,) but what we claim is that the Judge, in determining questions which arise under our Insolvent Act, (the same partaking of the nature of a special proceeding,) has the power to prohibit creditors having liens on the estate of the insolvent prior to his petition in insolvency, from enforcing those by " execution," and to order that the matter of all claims against the insolvent's estate be referred to a master to determine the priority of the demands, and the most judicious manner of sale, and upon such report to cause a

sale of the insolvent's effects to be made, and the liens thereon to be paid according to their priority.

The second objection of respondent is a mere resuscitation of the exploded rule, that Courts of Law would not notice the injunctions of the Chancellor, and is fully met by the fact that the orders of the eighth and fourteenth of November, A. D. 1854, were not the orders of the Chancellor, but the orders of the Judge, in a proceeding partaking in its character as much of law as equity. Then, if we are correct in our conclusion, that the orders in insolvency prevented us for thirty days from issuing execution, are we entitled to that much additional time to enforce the lien of the Reynolds judgment? Such was the rule of common law. 3 Bacon's Abridgment, 724; Dewey v. Latson, 6 Cal. R.; 430.

*Crocker & Robinson* for Respondent.

That the title to the premises is vested in the defendant. The statute provides that from and after the time a judgment is docketed it becomes a lien upon all the real property of the judgment-debtor, " until the said lien expires. The lien shall continue for two years." Practice Act, § 204.

The Reynolds & Co. judgment was docketed October 11, 1853, and the lien expired on the 11th of October, 1855, which was nine days before the sale to Cadwalader. At the time of his purchase, therefore, the judgment was no longer a lien upon the premises, and his purchase was subject to the unexpired lien of defendant's judgment.

But it is urged that, as the execution was issued and levied October 4, 1855, seven days before the lien expired, the judgment-lien was thereby extended, and continued in force to the day of sale. We reply, that the law is well settled that the sale must be made within the two years, otherwise the purchaser can not claim the benefit of the judgment-lien. And, in support of this position, we cite the following authorities : Roe v. Swart, 5 Cowen, 294; Little v. Harvey, 9 Wend., 157; Tufts v. Tufts, 18 Ib., 621; Dickinson v. Gilliland, 1 Cowen, 481; Graff v. Kip, 1 Edw. Ch. Rep., 619; Burne v. Moner, 13 S. & M., 427; Rupert v. Dantzler, 12 Ib., 697; Kilpatrick v. Byrne, 25 Miss., 571; Trapnall v. Richardson, 8 English, Ark., 543; Dickenson v. Collins, 1 Swan. Tenn., 516; Miller v. Estell, 8 Yerger, 452; Davis v. Eternam, 20 Penn. State Rep., 256; Shephard v. Bailleal, 3 Texas, 26; 3. Ohio, 135; 9 Ohio, 142.

The effect is, that the judgment, after the lien has expired, becomes a junior judgment to later judgments whose liens are unexpired. 7 Cowen, 540; 1 Edw. Ch. Rep., 619.

And a purchaser under it has the right to redeem a sale made under such later judgment. 7 Cowen, 540.

The appellant cites several cases which, he insists, conflict with

these decisions, the most important of which are from Penn. R. The leading case is 13 Serg. & Rawle, 144, which was decided upon the common opinion and practice of the bar, and not upon established legal principles. The main question passed upon was, whether it was necessary to receive such a judgment by *scire facias.* This case was followed by others in 1 Pen. & Watts, 444, and 2 Barr, 490, under the statute of 1798.

In 1827, a new law was enacted upon the subject, and the Court did not hesitate, when the question again came before them, to change their rulings, having seen the great evils flowing from their former decisions; so, in 20 Penn. State Rep., (8 Harris,) 256, they decided in accordance with the decisions in New York and other States. In this case, the Court points out very forcibly the evils of the contrary doctrine.

The appellant also cites 12 Missouri, 361, as a conflicting case. In that State, sheriffs' sales are required by law to be made at a term of the Circuit Court. The Legislature had postponed the term of Court in Warren county, providing in the act, however, that sales of property which would have been made at the old term, should be made at the next term. This postponement brought the sale in this case beyond the time fixed for the lien, and the Court very properly held that the act saved the rights of the party, which would otherwise have been lost; that the delay was not by his consent, and it would be great injustice to allow it to work him an injury.

The case in 13 Howard, 287, is also cited. There, before the sale under the judgment, the debtor died, but an execution had been levied upon the premises in his lifetime; after his death, a *venditoni exponas* issued, under which the property was sold, and the question was, whether this sale was valid, no *scire facias* to receive the judgment having been issued. The Supreme Court held it was, because, by the levy of the execution, the property was in the custody of the law. The question involved in this case was not passed upon or involved in that case, and it therefore has no application.

But it is urged by the appellant, that the general orders, "staying proceedings against the debtors" in the insolvency proceedings, operated to extend the lien at least thirty days. That during that time, Reynolds & Co. could not issue execution or enforce the lien, and, therefore, the lien should be extended.

The eighth section of the Insolvent Act, Compiled Laws, 316, provides that the Court "shall order that all proceedings against the debtor be stayed." This applies only to proceedings against "the debtor," and not those which are solely against his property, to enforce liens previously acquired. In fact, the statute expressly excepts them from the operation of the law. Compiled Laws, § 36, p. 321.

This Court has already decided that an action for the enforce-

Isaac *v.* Swift.

ment of a lien is not affected by the proceedings in insolvency, but the party proceeds, sells the property under his lien, and if there should remain a surplus, after discharging the lien and costs, the assignee would be entitled to it. Rix *v.* McHenry, 7 Cal., 89.

These cases effectually dispose of this point, for they show conclusively that these general orders did not prevent Reynolds & Co. from issuing at any time to enforce their lien against the property of the debtor. If they had attempted to proceed against him personally, it would no doubt have been a contempt of the Court, because that would have been a disobedience of the order.

We think the correct rule to be, that no orders or decrees made in a suit other than that in which the judgment is rendered, can affect this question of the expiration of the lien, for the reason that persons purchasing property at sheriff's sale can have no notice of them.

Reynolds & Co. had ample time (ten months) after these orders ceased to operate, to issue execution and sell, and if they feared that the issuance of an execution, while the orders were in force, might be considered a contempt, the Court, on motion, would have granted them leave to proceed and enforce their lien; though, under the decisions of this Court, no such leave was necessary.

Questions similar to this have been passed upon by the other Courts. Thus, it was held that proceedings under the United States bankrupt law, did not affect a judgment-lien. 2 Story's Rep., 376; 9 Smedes & Marshall, 9.

So, an injunction against enforcing the judgment, will not affect the lien, or operate to extend it. 3 Texas Rep., 26; 8 Yerger, 452; 4 How. Miss. Rep., 185.

In 9 Wend., 157, it was held, under the law of New York, that an injunction, or writ of error, would extend the lien, but it was doubted whether a Judge's order, staying proceedings, was an injunction, within the meaning of the act.

In Ohio, it has been held that an order staying execution would not extend the time. 3 Ohio, 135; 9 Ohio, 142.

The judgment ceases to be a lien at the expiration of the statutory limit, although no execution could have been taken out within the whole time. 7 Paige, 137.

The appellant refers to the case of Dewey *v.* Latson, 6 Cal. R., 130, as establishing the contrary doctrine. In that case, this Court merely decided that when a judgment was appealed, the statute respecting the lien did not commence running until the *remittitur* from the Appellate Court was filed. This is correct, because the pendency of the appeal suspended the judgment, and until the *remittitur* was filed it stood as though no judgment had been rendered. This has no application in the present case,

because the Insolvent Act (§ 36) expressly provides that "all liens" previously existing "shall remain good and valid, and may be enforced in the same manner as though no such surrender had been made."

The question whether a levy upon real estate is a satisfaction of the judgment, is not properly involved in this case, but the following cases hold that it is not : 4 Mass., 403 ; 14 Wend., 260.

So it is urged, that as the sheriff had a right to levy upon the lot, therefore he had a right to sell, after the lien had expired, with the same effect as though the lien still existed ; otherwise it would make the sheriff a "fraudulent vendor." To this we say that the sheriff always sells property subject to legal liens, and he has no power to decide upon these liens. It is for the purchaser to ascertain what kind of a title he is buying. In this case, Cadwalader purchased subject to the lien of the Swift judgment, which had, by the delay, obtained priority, and he could have secured a valid title had he paid off Swift's judgment, or redeemed the sale to Swift. Having neglected to do this, he stands like any other person, purchasing property subject to prior liens, which eventually sweep the property. He bought with his eyes open.

The appellant also relies upon the doctrine of relation, but we can not conceive how that doctrine can extend a judgment-lien for a single day beyond the time fixed by the statute. It is the doctrine of extension, and not of relation, that we are now investigating.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

This controversy has relation to a lot in Sacramento city, both parties claiming title under Arents and Chedic. Reynolds & Co. obtained judgment against Arents and Chedic on the 11th of October, 1853, upon which execution was issued and levied 4th of October, 1855, and the property sold by the sheriff on the 20th of October, 1855, to the vendor of plaintiff. On the 8th of June, 1854, the defendant, Swift, obtained judgment against Arents and Chedic, upon which execution was issued and levied in February, 1856, and the property sold to defendant by the sheriff in March, 1856.

It will be seen that the execution upon the judgment of Reynolds & Co. *v.* Arents and Chedic, was issued and levied seven days *before* the expiration of two years from the date of the judgment, and that the sale was made some nine days afterwards. The question is, whether the issue and levy of this execution, before the lien of the judgment expired, had the effect to prolong the lien beyond the time limited by section two hundred and four of the Code. That section provides, "that from the

time the judgment is docketed, it shall become a lien upon all the real property of the judgment-debtor, not exempt from execution in the county, owned by him at the time, or which he may afterwards acquire until said lien expires;" and that "the lien shall continue for two years unless the judgment be previously satisfied."

The New York Statute of 1813, concerning Judgments and Executions, provided that "all judgments hereafter to be rendered, shall cease to be a lien or incumbrance upon any real estate, as against *bona fide* purchasers, or subsequent incumbrancers by mortgage, judgment, or otherwise, from and after ten years from the time the same shall be docketed." (1 R. L., 500.)

In the case of Roe *v.* Swart, (5 Cowen, 294,) the Court said : "The words leave no room for doubtful construction." So, in the case of Little *v.* Harvey, (9 Wend., 158,) it was said, by Sunderland, J., in delivering the opinion of the Court, that "the language of the act is too clear to admit of any question as to its construction." It was, accordingly, held in both these cases, that the issue and levy of the execution before the expiration of the ten years, would not extend the lien beyond the time mentioned in the statute, "unless the plaintiff has been restrained from issuing execution by *injunction out of Chancery.*" This is the settled doctrine in that State. (18 Wend., 621 ; 1 Cowen, 481.)

By an act of the Legislature of the State of Mississippi, approved February 24, 1844, it was provided that "no judgment heretofore rendered in this State shall be a lien on the property of the defendant or defendants, for a longer time than two years from the passage of the act." Under this provision, it was held that the execution must issue and the sale be made within the two years; otherwise the lien of the judgment was lost. The issue and levy of an execution within the time limited, would not prolong the lien of the judgment. (Rupert *v.* Dantzler, 12 S. & M., 697.) The decision in the case was expressly approved by the Court in the subsequent case of Beirne *v.* Mower, (13 S. & M., 427.)

The statute of 1799 provided that no execution should be levied, or sale of lands made, which might affect the title of a *bona fide* purchaser, unless the execution was levied and the sale made within twelve months from the rendition of the judgment. It was, accordingly, held that the sale must be made within the time limited by the act. (Dickenson's Lessee *v.* Collins, 1 Swan. Tenn. R., 516.)

By the statute of Texas, passed 5th of February, 1840, (Acts 4th Cong., 95,) a final judgment was made a lien on all the property of the defendant, situated and being in the same county where judgment was rendered, "provided that said lien shall

cease to operate, if execution be not issued out, within twelve months from the date thereof."

Under this act, it was held, in the case of Shephard v. Bailleal, (3 Texas Rep., 26,) that the lien of the judgment ceased if execution was not issued within the year, unless the issuing of the execution was prevented by some legal impediment.

In the case of Trapnall v. Richardson, (8 Eng. Rep., 543,) it was held, by the Supreme Court of Arkansas, that a levy upon land, within three years of the date of the judgment, would not continue the judgment-lien beyond that period.

In considering these authorities, it must be conceded that the terms of the several statutes mentioned are stronger than the language of section two hundred and four of the Code. The language of the former is, substantially, that the lien shall not continue, or shall cease after the period stated; while the language of the statute of this State is, that the judgment shall continue to be a lien for two years. But we can not see any substantial difference in the meaning of these different forms of expression. The section two hundred and four creates the lien of the judgment, and also fixes the period of its continuance. Taking the different portions of the section together, and the intent is clear that the lien should not continue beyond the time specified. The power that creates, confines the existence of the thing created within a specified period. The lien itself would not exist without this provision of the statute; and, of course, can not exist beyond the time expressly stated. We could as well assume the *existence* of the lien in the first instance, without the statute, as to assume its *continuance* without the statute. It required express words to create the lien, and it equally requires express words to continue it beyond the time specified. Had the Code simply created the lien, without limiting the period of its existence, then we could not presume that any limit was intended. But, when a limit is expressly stated, we can not presume a continuance beyond it.

The rule that confines the lien of the judgment strictly within the two years, is the most simple and certain in theory, and the most beneficial in practice. If we hold that the lien of the judgment may be prolonged beyond the period stated, by the issue and levy of an execution within the time, then we can fix no definite and certain limits to the continuance of the lien. Once we pass the limits of the statute, we open a door to the most vexatious litigation. The titles to real estate would become uncertain, and the useful end intended to be accomplished by our recording system, would, in fact, be defeated. A party wishing to purchase the land of the judgment-debtor, could not do so with safety without the exercise of extraordinary diligence. The provisions of the code give the judgment-creditor ample protection. He can cause an execution to issue at any time;

6

and, under it, the sheriff can advertise and sell within the short period of twenty days. There is, therefore, no reason for allowing him the privilege of delaying the issue of execution until it is too late to sell before the lien expires. It is true that an occasional hard case may arise under the strict rule, but upon the whole, it must be productive of the most good.

We have carefully examined the authorities cited by the learned counsel for the plaintiff. The case of Taylor v. Miller (13 How. U. S. Rep., 287) is not in point. The question whether the issue and levy of an execution could prolong the lien of the judgment beyond the period stated, did not arise in that case. There is nothing in the opinion of the Court that conflicts with the view we have taken. The judgment was a lien upon the property of Crane, the judgment-debtor. Execution was issued and levied upon the land ; but the sale could not be made for the want of legal bids, and the papers were returned to the clerk's office. Crane having died within about one year, a writ of *venditioni exponas* was issued, commanding the sheriff to sell the land ; and, under this writ, the sale was made. It was objected that this writ could not be issued until after the revival of the judgment upon *scire facias* against the heirs. The Court held, that the property was in the custody of the law—that the lien of the execution was not lost, and the sale, under the *venditioni exponas*, was valid, this writ being regarded as merely " a continuation and completion of the previous execution."

The cases of Pennock v. Hart, (8 Ser. & R., 369,) The Com. v. McKisson, (13 Ser. & R., 144,) and Bell v. Ingraham, (2 Barr, 490,) are certainly in point for the plaintiff. But the weight of reason and authority would seem to be against the doctrine of those cases. The injurious consequences flowing from these decisions, induced the Legislature of Pennsylvania to pass the act of twenty-sixth of March, 1827, under which it has since been held that the issuing of a *fi. fa.* within the period mentioned in the statute, will not extend the lien of the judgment beyond such period. (Davis v. Ehrman, 8 Harris, 256.) The remarks of Woodward, J., in the last case, and of Chief Justice Watson, in the case of Trapnall v. Richardson, (8 Eng. Ark. Rep., 556,) are very forcible, and clearly point out the evils of the rule contended for by plaintiff's counsel in this case.

The case of the Bank of Mo. v. Wells (12 Mo. Rep., 361,) was different in its circumstances ; and the decision is not precisely in point. The sale, within the time limited, was prevented by a statute changing the time of holding the terms of the Circuit Courts—at which all sales of real estate were required to be made.

As the question does not arise in this case, we express no opinion as to whether, in case the sale be prevented by injunction, or other legal impediment, the lien of the judgment must

expire at the end of the two years.   There was no impediment preventing the sale in this case, the order of the Court, made pending the proceedings in insolvency, not having such effect. (Rix *v.* McHenry, 7 Cal. Rep., 89.)

Judgment affirmed.