E. PASOUR v. JONATHAN RHYNE.

*Judgment Lien—Statute of Limitations.*

1. A lien acquired by the levy of a writ of *fiere facias* upon land is lost by the issuing of an alias *fi. fa.*, and a writ of *venditioni exponas* thereafter issued has no effect to continue or revive the lien of the first *fi. fa.*

2. Under section 259 of the code, it is the judgment alone which creates a lien on land, and the sole office of the execution is to enforce the lien by the sale of the land upon which it has attached.

3. The lien of a judgment docketed under this section is lost by the lapse of ten years from the date of the docketing of the judgment; and this is so notwithstanding execution has issued within the ten years.

(*Yarborough* v. *State Bank*, 2 Dev., 23; *Ross* v. *Alexander*, 65 N. C., 576; *James* v. *West*, 76 N. C., 280, cited and approved.)

MOTION for leave to issue Execution heard on appeal at Fall Term, 1879, of GASTON Superior Court, before *Buxton, J.*

This was a motion before the clerk of the superior court of Gaston county for leave to issue execution on a judgment rendered in behalf of the plaintiff against the defendant at May term, 1867, of the superior court of said county. The defendant exhibited his discharge in bankruptcy, dated the 2d of June, 1873; whereupon the motion was overruled by the clerk and the plaintiff appealed to the superior court, and at said fall term the judgment of the clerk was affirmed and the plaintiff appealed to this court.

*Messrs. Merrimon, Fuller & Fuller*, for plaintiff.
*Messrs. Wilson & Son*, for defendant.

ASHE, J. The record shows that at the February term, 1868, of said court, a *fieri facias* was issued on the judgment upon which the sheriff of Gaston county made return that he had levied on a tract of land as Jonathan Rhyne's prop-

erty, lying on Long creek adjoining the lands of William Ray and others, containing three hundred and fifty-three acres, more or less; also on his interest in one other tract known as the "Rhyne & Hoffman" land, lying at and around Spencer's ford on the south fork of the Catawba river, of six hundred and twenty-two acres, more or less; and that there was no sale because it was an old debt.

On the 10th of December, 1868, an *alias* execution was issued returnable to spring term, 1869, with an endorsement of sixteen dollars and forty cents collected from the plaintiff, and the sale of Jonathan Rhyne's interest in the "Rhyne & Hoffman" tract on the 6th of March, 1869, for fifteen hundred dollars "for Clemmer's claim by consent of E. Pasour." Writs of *venditioni exponas* were regularly issued thereafter to sell the land levied on up to fall term, 1872, without any sale being had.

A lien upon the land of the defendant was acquired by the levy of the first *fieri facias* issued from the February term, 1868, but the plaintiff then sued out an *alias* execution, by which must be understood an *alias fi fa.*, for the term *alias* imports another writ of like kind. And by issuing the *alias fi. fa.*, the benefit of the levy was lost. The levy was waived. *Yarborough* v. *State Bank*, 2 Dev., 23; *Ross* v. *Alexander*, 65 N. C., 576; *James* v. *West*, 76 N. C., 290.

The levy having been lost by the issuing of the *alias fi. fa.*, the writ of *venditioni exponas* afterwards issued had no effect to continue or revive the lien acquired by the first *fi. fa.*, and was as inoperative for that purpose as though no levy had ever been made. So that, there was no lien upon the land of the defendant after the fall term, 1868, unless it was obtained by docketing the judgment.

But was the judgment docketed? if so, when was it done? The record states it was docketed on the 23d of May, 1867; but a judgment docketed before the adoption of the code of civil procedure could not create a lien; and it does not ap-

pear that it has been docketed since, which was necessary to invest it with the new quality of creating the lien which has been attached to it by the code. By C. C. P., § 400, it is provided that "the clerks of the superior courts at the request of a party thereto and on the payment of the fee of one dollar, shall enter on a separate docket all suits which at the ratification aforesaid shall have been commenced, and in which final judgment has not been rendered in the late county courts, superior courts of law and courts of equity of their respective counties;" and by section 403, "existing judgments and decrees not dormant may in like manner be entered on the execution docket," &c.

Taking it for granted, however, that the judgment was docketed as soon as the new system went into operation, for instance, when the first execution issued thereafter, viz: Dec. 10, 1868, and by that means secured a lien upon all the real property of the defendant, how will that avail the plaintiff? Under the present system it is the judgment and that only which creates a lien on real property by virtue of section 259 of the code. None is acquired by the execution except upon personal property, and then only from the levy as against purchasers; but when real property is in question, its sole office is to enforce the lien of the judgment by the sale of the land upon which it has attached. No execution could be issued to subject the personal property of the defendant to this judgment, because he had been relieved from all liability on the judgment by his discharge in bankruptcy. As to him personally it was satisfied—dead. And conceding that a lien on the real property of a bankrupt may be enforced in the courts of the state after his discharge, it is only by virtue of the lien that an execution could be issued. But where there is no lien in existence to be enforced, there is no authority to issue an execution.

In this case there was no lien on the land of the defendant at the time of the application for leave to issue the exe-

cution, for more than ten years had elapsed since the docketing of the judgment, if it had ever been docketed. And it is provided by section 254 of the code that a docketed judgment shall be "a lien upon the real property in the county where the same is docketed, of every person against whom any such judgment shall be rendered, and which he may have at the time of docketing thereof in the county in which such real property is situated, or which he shall acquire at any time for *ten years* from the time of docketing the same in the county where the judgment roll was filed." So that, the lien of the plaintiff's judgment on the real property of the defendant had been lost by the lapse of time, and, as in this case, the execution was sought to enforce it. There was no ground for the application and no power in the clerk to issue it.

In this view of the case it is needless to enquire whether the land had passed by operation of the bankrupt law into the hands of the assignee or remained with the bankrupt in right of his exemption. We are of opinion there is no error in the judgment of the court below. Let this be certified to the superior court of Gaston county.

No error.                                            Affirmed.