JOSHUA SPICER et al. v. S. J. GAMBILL et als.

*Judgment lien—Execution.*

1. Where an execution is levied on land before the expiration of the judgment lien, but the sale does not take place until after the expiration of such lien, the levy does not extend the lien to the sale, so as to defeat a purchaser or prior encumbrancer whose right attached during the existence of the lien, but before the levy.

2. If an execution issue more than ten years after the docketing of the judgment, a sale of both real and personal property under it is valid, but in such case it is only a lien on both real and personal property from the levy, and not from the *teste,* of the execution.

(*Fox* v. *Kline,* 85 N. C., 173; *Williams* v. *Mullis,* 87 N. C., 159, cited and approved. *Pasour* v. *Rhyne,* 82 N. C., 149; *Lyon* v. *Russ,* 84 N. C., 588, cited, distinguished and approved).

CIVIL ACTION for the recovery of land, tried before *Gilmer, Judge,* and a jury, at Spring Term, 1884, of the Superior Court of Wilkes County.

The facts are stated in the opinion. The plaintiff appealed.

*Messrs. R. F. Armfield* and *Batchelor & Devereux* for the plaintiffs.

*Mr. D. M. Furches,* for the defendants.

SMITH, C. J. The land sought to be recovered in this action, formerly belonged to William Gambill and on his death descended to his children Samuel J. Gambill, John Gambill and Catharine Vannoy, as heirs-at-law, under the first of whom both parties claim. The plaintiffs derive title under an execution sale and

the sheriff's deed for the estate of said Samuel J., made on August 2nd, 1880, which execution issued on April 14th previous, and was levied the next day, upon a judgment recovered at Spring Term, 1870, of Wilkes Superior Court, said term beginning on April 10th, by one Hardin Spicer against the said Samuel J. and others, not including the defendants associated with him in this action. It does not appear that any process was sued out to enforce the judgment until after an order was obtained from the clerk, made on March 3rd, 1880, pursuant to the execution issued under which revising order, the sale was made to the plaintiffs. The defendant Benjamin E. Gambill asserts title to the interest and estate of each of the tenants in common in the land, by deeds by them severally executed to him, and produced in evidence a deed from said Samuel J., for the recited consideration of five hundred dollars, made in 1878, and also deeds from the others, the date of which is not given, all of them purporting to convey an undivided one-fourth part of the premises. This would leave undisposed of in each, one undivided one-twelfth, unless there was another party unnamed entitled to share in the inheritance, or this particular interest in some unexplained manner has passed from the bargainors.

The case on appeal does not, however, raise any question upon this point, and it does not enter into our consideration, nor was it adverted to in the argument.

These facts being made to appear, the Court expressed an opinion that the prior conveyance made in 1878, to the defendant Benjamin E., divested the estate out of the said Samuel J., and there was none to pass under the sheriff's sale and deeds. In submission to this ruling the plaintiffs suffered a non-suit and appealed. The only question thus raised for our solution is whether the new life imparted to the dormant judgment by the order made in March, just before the expiration of the ten years next after its rendition, prolonged the lien given by the statute, so that the subsequent sale under execution after the lapse of that period, displaces the conveyance made two years previous and vests the title in the plaintiffs.

In *Fox* v. *Kline*, 85 N. C., 173, the plaintiff, assignee of a judgment which had been rendered on June 15th, 1870, and had become dormant, after obtaining leave, caused an execution to issue to the sheriff one month. more than ten years thereafter, under which the sheriff made advertisement, and, with another execution which came into his hands later, made sale of the debtor's land. It was declared that the lien given by the statute had ceased, and the plaintiff in the other writ, the sale being under both, was entitled to the proceeds of the sale.

In *Williams* v. *Mullis*, 87 N. C., 159, where, under similar circumstances, an execution issued and personal property of the debtor was seized and sold under it, it was held that the purchaser had acquired title thereby, and the Court refused to vacate or set aside the process.

While it is not so declared in direct terms, we see no reason for refusing the same effective operation to an execution when real property is sold under it, as between the parties, in disposing of the debtor's *estate then held* and liable to such process.

In the argument it was insisted for the appellant that an execution issued and levied during the continuance of the statutory lien, prolonged its duration until the writ could be executed by a disposal of the land, and displaced in favor of the purchaser all liens and encumbrances attaching intermediately and since the rendition and docketing of the judgment, in support of which *Surrett* v. *Hulse*, 67 Mo., 201, is cited. This case does so decide, but in this particular, as defeating intervening purchasers and creditors, it is repugnant to the general current of adjudications elsewhere, and notably of one, *Isaac* v. *Swift*, 10 Cal., 71, determined upon full argument and in a well sustained opinion of *Burnett, Judge*, concurred in by *Terry, Chief Justice*, and *Field, Judge*, now an able member of the Supreme Court of the United States. In that State the judgment lien lasts but two years, and the Court say: "If we hold that the lien of the judgment may be prolonged beyond the period stated, by the issue and levy of an execution within the time, then we can fix no definite and cer-

tain limits to the continuance of the lien. Once we pass the limits of the statute, we open the door to the most vexatious litigation. The titles to real estate would become uncertain, and the useful end intended to be accomplished by our recording system would in fact be defeated. * * The provisions of the Code give the judgment creditor ample protection. He can cause an execution to issue at any time; and under it the sheriff can advertise and sell within the period of twenty days. There is therefore no reason for allowing him the privilege of delaying the issue of execution until it is too late to sell before the lien expires." Most forcibly does this reasoning apply to the statute in this State, which gives the judgment creditor five times as long a period in which to enforce his lien by a sale of the premises to which it adheres.

In New York the judicial rulings conform to those of California, and it is held that the issuing of an execution does not protract the statutory lien beyond its assigned limits to the prejudice of *bona fide* purchasers or to defeat subsequent liens and encumbrances, while the lien remains undisturbed as against the debtor, and this by reason of the express words of the statute. *Scott* v. *Howard*, 3 Barb., 319; *Tufts* v. *Tufts*, 18 Wend., 621.

In Illinois the lien resulting from the judgment subsists for seven years, if execution be sued out in one year, and the lien ceases after that time as against purchasers and subsequent encumbrances; and, in putting an interpretation upon the act, BRUSE, C. J., delivering the opinion in *Gridley* v. *Watson*, 52 Ill., 186, puts an inquiry and makes answer thereto in these words: "Did the last execution, issued after the expiration of seven years, revive the lien of the judgment, so that the fruits of it might be obtained by a levy and sale of the premises? We answer, no. The office of an execution is not to revive an expired lien, but to carry into effect an existing lien."

This is correct so far as the writ performs the office of a *venditioni exponas*, and to such we understand the remark of the Court to be intended to apply, and not as to its other functions as a *fieri facias*.

In *Tauncy* v. *Heneressy*, 53 Ill., 97, WALKER, J., reiterates the proposition, remarking that the levy of the execution "did not have the effect of prolonging the lien of the judgment beyond the period limited by the statute, and if the levy operated as a lien *it expired with the lien* of the judgment." In *Bayley* v. *Ward*, 37 Cal., 121, RHODES, J., says : "Under the execution, doubtless, lands not subject to the judgment lien may be levied on." See also *Rogers* v. *Druffel*, 46 Cal., 654, to the same effect. The cases decided in this Court which may be supposed to be in conflict are *Pasour* v. *Rhyne*, 82 N. C., 149, and *Lyon* v. *Russ*, 84 N. C., 588, but on examination there will not be found any repugnancy.

In *Pasour* v. *Rhyne*, the judgment had become dormant and when leave to issue execution was asked under §440 of The Code, the defendant in opposition exhibited his discharge in bankruptcy, which was a complete answer to the application, unless the debt had become a lien on the debtor's land, and then it was effectual only to the extent of the value of the property, on which it was an encumbrance. But it appeared that the judgment lien had expired, and the indebtedness which might have survived, if left to be enforced in a State Court, was itself swept away. The order for an issue of execution was therefore denied in the Court below, and the ruling was affirmed on appeal.

In *Lyon* v. *Russ*, two intervals, each of more than three years, had separated successive executions, and the judgment had become doubly dormant. The last preceding, that of July 3rd, 1879, under which the sheriff made sale, was issued in November, 1874. The process was considered in substance an order of sale, in the nature of a *venditioni exponas, to satisfy the judgment lien*, and as the lien had been lost by lapse of time, and could not be enforced by such process, it was held to confer no authority on the officer to sell. But the decision does not go so far as to prevent a sale of the debtor's property under an execution operating as a writ of *fieri facias*, and we have since held in *Williams* v. *Mullis, supra*, that personal property (and if so, why

not land?) may be sold under such process. This examination has been protracted with a view to settle the law on this practical subject, and we announce as our conclusion, that to preserve the judgment lien, the process to enforce and render it effectual must be completed by a sale within the prescribed time. If delayed beyond these limits, unless interrupted in the manner pointed out in §435 of The Code, the lien is gone, and the officer can only sell the debtor's estate as if no such lien had ever existed, and in subordination to liens or encumbrances meanwhile attaching. While the point is not necessarily involved in passing on the appeal, we are inclined to the opinion, though it is held otherwise in New York, under the words of the statute of that State, that the lien as against a *bona fide* purchaser for value, or other execution, originates in the levy or seizure of the property, whether real or personal, thus producing harmony in the administration of the law, and conforming the rule as to the former to that created for the latter by the act of 1869. The Code, §448, par. 1. The law now gives the judgment creditor a much more advantageous lien for the security of his debt, with its duration commensurate with the statute of limitations in which it may be made available, thus superseding the rule, and removing the reasons for its adoption, which referred the lien under the former system, to the *teste* of the execution.

There is no error, and the judgment must be affirmed.

No error.                                          Affirmed.