JOSEPH B. CHESHIRE, JR., TRUSTEE UNDER THE WILL OF B. S. HARRISON, DECEASED, v. W. B. DRAKE AND WIFE, S. ELVA DRAKE.

(Filed 24 November, 1943.)

**1. Judgment § 21—**

The lien of a judgment, created upon real estate by the provisions of C. S., 614, is for a period of ten years from the date of the rendition of the judgment and such lien ceases to exist at the end of that time, unless suspended in the manner set out in the statute. It is in the interest of public policy that this statute should be strictly construed.

**2. Execution § 19—**

Where the bid for real estate, offered at a sale held under authority of an execution within the period of ten years next after the date of rendition of the judgment upon which the execution issued, is raised and resales

are ordered successively under provision of C. S., 2591, as amended, by which the final sale so ordered takes place on a date after the expiration of said period of ten years, such orders do not have the effect of prolonging the statutory life of lien of the judgment within the provisions and meaning of C. S., 614.

APPEAL by defendants from *Johnson, Jr., Special Judge,* at March Civil Term, 1943, of WAKE.

The following is summary of pertinent portion of case on appeal as stipulated by the parties:

On 22 December, 1932, judgment by confession was duly rendered by clerk of Superior Court of Wake County, North Carolina, against defendants W. B. Drake and wife, S. Elva Drake, in favor of Joseph B. Cheshire, Jr., Trustee under the will of D. B. Harrison, deceased, for $13,307.82, plus interest, and cost.

On 30 September, 1942, at instance of attorney for plaintiff, execution returnable 30 November, 1942, was issued on said judgment against property of W. B. Drake and wife, S. Elva Drake. Pursuant thereto, homestead exemption allotted to S. Elva Drake was confirmed, on her appeal to, and by judge of Superior Court at October Civil Term, 1942, and on 20 October, 1942, the sheriff of Wake County returned said execution "for lack of time in which to advertise."

On 21 October, 1942, at request of attorney for plaintiff, an execution, returnable on or before 21 December, 1942, was issued out of office of clerk of said Superior Court, on said judgment, against the property of defendants W. B. Drake and wife, S. Elva Drake. This execution bears endorsement "Alias execution," though there is nothing in the body of it to show that it is an *alias* execution.

On 22 October, 1942, the sheriff of Wake County purporting to act "under and by virtue of an execution" directed to "him" advertised notice of sale on 24 November, 1942, of "all right, title and interest which said defendants, W. B. Drake and wife, S. Elva Drake, or either of them, now has or at any time at or after the docketing of the judgment in said action had in and to certain specifically described real estate."

On 24 November, 1942, the sheriff reported to clerk of Superior Court of Wake County that at sale held on said date pursuant to execution issued in this cause and to notice of sale, Joseph B. Cheshire, Jr., Trustee, became the last and highest bidder for all four tracts at specified prices.

On 4 December, 1942, upon the bids on the several tracts being raised pursuant to the provisions of C. S., 2591, as amended by Public Laws 1931, chapter 69, Public Laws 1933, chapter 482, Public Laws 1939, chapters 36 and 397, and other amendments, the clerk of Superior Court entered orders rejecting the several bids of J. B. Cheshire, Jr., Trustee,

made when the several lots of land were offered on 24 November, 1942, and "ordered and directed" the sheriff "to re-open the sale of said property and to re-advertise and resell the same as provided by law beginning said resale at the increased bid offered."

On 5 December, 1942, at request of attorney for plaintiff, an execution returnable on or before 14 January, 1943, was issued from office of clerk of Superior Court on said judgment against the property of defendants W. B. Drake and wife, S. Elva Drake. This execution bears endorsement "Alias execution," though there is nothing in the body of the execution to show that it is an *alias* execution.

On same day, 5 December, 1942, the sheriff of Wake County pursuant to the foregoing execution and by virtue of an order of resale made by the clerk of Superior Court of Wake County because of advanced bids made for all of the lots described therein, advertised notice of sale of same property on 22 December, 1942, the bidding on each lot to start at amount of raised bid.

On 22 December, 1942, the sheriff of Wake County reported to the clerk of Superior Court of said county that at sale held on said date, "pursuant to execution issued in this cause," order of Superior Court of Wake County for a resale and notice of resale, Joseph B. Cheshire, Jr., Trustee, became the last and highest bidder for all four of said lots at specified prices. These bids were duly raised on same day, 22 December, 1942, and on same day the clerk made an order of resale.

On 24 December, 1942, the sheriff returned both the executions issued on 21 October, 1942, and on 5 December, 1942, as above recited, with endorsement on each that it is "returned because of insufficient time to resell property as ordered by W. G. Mordecai, C. S. C., Wake County."

Thereafter, on 24 December, 1942, at instance of attorney for plaintiffs, an execution returnable on or before 22 February, 1943, was issued by clerk of Superior Court, on said judgment against property of defendants W. B. Drake and wife, S. Elva Drake. This execution bears endorsement "Pluries execution," though there is nothing in the body of it to show that it is a *pluries* execution.

On the same day, 24 December, 1942, sheriff of Wake County, purporting to act "under and by virtue of an execution directed to" him "from the Superior Court of Wake County in the above entitled action and of an order of resale made by the clerk of the Superior Court of Wake County because of advanced bids made for all of the lots described" therein, advertised notice of sale of same property on 9 January, 1943, the bidding on each lot to start at amount of raised bid.

On 11 January, 1943, the sheriff of Wake County reported to the clerk of Superior Court of said county that at sale held on said date "pursuant to execution issued in this cause, order of the clerk of the Superior

Court of Wake County for a resale of the property, and to notice of resale published and posted as required by law," Joseph B. Cheshire, Jr., Trustee, became the last and highest bidder for all four of said lots at prices specifically mentioned. These bids on the first, second and third lots were raised on 22 January, 1943, and the clerk made an order of resale.

On 25 January, 1943, sheriff of Wake County, purporting to act "under and by virtue of an execution directed to" him "from the Superior Court of Wake County in the above entitled action and of an order of resale made by the clerk of the Superior Court of Wake County because of advanced bids made" on said three lots, advertised notice of sale of same on 9 February, 1943, the bidding on each lot to begin at amount of raised bid.

On 9 February, 1943, the sheriff of Wake County reported to the clerk of Superior Court of said county that at sale held on said date Julian A. Rand became the last and highest bidder for the first lot, and Joseph B. Cheshire, Jr., Trustee, became the last and highest bidder for the second and third lots.

Thereafter, on 19 February, 1943, defendants W. B. Drake and wife, S. Elva Drake, moved before the clerk of Superior Court of Wake County for an order recalling the execution issued herein on 24 December, 1942, returnable 22 February, 1943, and to quash same and the sales and other proceedings thereunder for that among other things, (1) said execution was issued more than ten years after the date of the rendition of the judgment confessed by defendants W. B. Drake and wife, S. Elva Drake, in favor of plaintiff as hereinbefore set forth, and after the lien of said judgment had expired, and (2) said execution and all proceedings thereunder cannot be supported by other earlier executions issued herein because of, among other things, (a) irregularities and insufficiency in their issuance and proceedings thereunder, and (b) the fact that the advertisements thereunder were not only begun before said executions were issued, and were in fact under different and separate executions, and (3) plaintiff has been guilty of laches in pursuing any rights he may have had.

Thereupon, the assistant clerk of Superior Court signed an order on 19 February, 1943, purporting to stay all proceedings with reference to said sales, including the determination of any motion for confirmation pending the hearing and determination of this motion, and until further order of the court.

Upon hearing on the said motion of defendants in support of which they filed affidavit, the clerk of Superior Court, by order dated 7 March, 1943, disallowed the motion, to which defendants excepted and appeal to Superior Court of Wake County. Upon hearing in Superior Court,

the presiding judge, in judgment entered, set forth that the court "finds the following facts," substantially these: (1) That the original sale in absence of the raise of bids, was made in amply sufficient time to have afforded consummation of sale by execution and delivery of deed before lapse of ten years from the date of rendition of the judgment; (2) that the sale was duly raised and the clerk, having then acquired supervisory jurisdiction over the sale, ordered a resale, and that thereafter the lands were duly resold, followed by further and additional raises of bids, orders of resale and sales—all under due orders of the clerk; (3) that while the last resale was conducted more than ten years after the rendition of the judgment, such last resale, as well as all intervening resales, being only a continuation of the original sale, held open for consummation under the provisions of C. S., 2591, as amended, relates back by operation of law to the date of the original sale.

And it is further recited that the court is of opinion (a) in any event, that the clerk's first order of resale, the assistant clerk's order staying further proceedings and this appeal, toll the statute of limitations within the meaning of C. S., 614, and that the lapse of time thereafter and until now does not constitute any part of the ten year lien period of the judgment; (b) that any irregularities of form that may exist in the chain of executions—*alias* or *pluries*—underlying the orders of resale made by the clerk are harmless, for that the orders of resale of the clerk, being in the nature of writs of *venditioni exponas,* were sufficient to support the resales; and (c) that the evidence bearing on other irregularities and laches of plaintiff is insufficient to warrant quashing the sale, and that the sale has been made in substantial compliance with the statutory procedure prescribed in such cases and that defendants' motion should be denied.

To these findings of fact and conclusions of law, and to judgment denying their motion, defendants W. B. Drake and wife, S. Elva Drake, except and appeal to Supreme Court and assign error.

*Paul F. Smith for plaintiff, appellee.*
*Jones & Brassfield for defendants, appellants.*

WINBORNE, J.  This is the pivotal question on this appeal: Where the bid for real estate offered at a sale held under authority of an execution within the period of ten years next after the date of rendition of the judgment, upon which the execution issued, is raised and resales are ordered successively under provisions of C. S., 2591, as amended, by which the final sale so ordered takes place on a date after the expiration of said period of ten years, do such orders have the effect of prolonging

the statutory life of lien of the judgment within the provisions and the meaning of C. S., 614? The answer is No.

The statute, C. S., 2591, as amended by Public Laws 1931, chapter 69, and by Public Laws 1933, chapter 482, applicable to sales (1) in the foreclosure of mortgages or deeds of trust on real estate, (2) by order of court in foreclosure proceedings either in the Superior Court or in actions at law, (3) publicly by an executor, administrator, or administrator with the will annexed, (4) by any person by virtue of the power contained in a will, or (5) "under execution duly issued," provides, in pertinent part, that (a) the sale shall not be deemed to be closed under ten days; (b) that if in ten days from the date of the sale, the sale price be increased as there specified, "the mortgagee, trustee, executor, or person offering the real estate for sale shall reopen the sale of said property and advertise the same in the same manner as in the first instance"; (c) that when the bid or offer is so raised, and the amount paid to the clerk, he shall issue an order to the mortgagee or other person and require him to advertise and resell such real estate; (d) that resales may be had as often as the bid may be raised in compliance with this section; and (e) that "upon final sale of the real estate, the clerk shall issue his order to the mortgagee or other person, and require him to make title to the purchaser." Sales of real estate under executions were brought within the provisions of this act by the amendment contained in chapter 482, Public Laws 1933, which became effective on 13 May, 1933. However, no amendment appears to have been made to C. S., 614, at that or any subsequent time.

The lien of a judgment created upon real estate by the provisions of C. S., 614, is for a period of ten years from the date of the rendition of the judgment. "But the time during which the party recovering or owning such judgment shall be, or shall have been, restrained from proceeding thereon by an order of injunction, or other order, or by the operation of any appeal, or by a statutory prohibition, does not constitute any part of the ten years aforesaid, as against the defendant in such judgment . . ." There is no other savings clause in the statute and, as stated in *Pipkin v. Adams,* 114 N. C., 201, 19 S. E., 105, this Court has adopted the principle that it is in the interest of public policy that this statute should be strictly construed. See *Spicer v. Gambill,* 93 N. C., 378.

And the uniform holding of this Court is that, under the provisions of C. S., 614, the lien of a judgment ceases to exist at the expiration of ten years—unless that time be suspended in the manner set out in the statute. See *Lupton v. Edmundson,* 220 N. C., 188, 16 S. E. (2d), 840, where the decisions on the subject are assembled. It is well settled, too, as expressed by *Smith, C. J.,* in *Spicer v. Gambill, supra,* that "to preserve the judgment lien the process to enforce and render it effectual

must be completed by a sale within the prescribed time," and "if delayed beyond these limits unless interrupted in the manner pointed out in section 435 of the Code (now C. S., 614), the lien is gone." *Lupton v. Edmundson, supra.* Moreover, while execution is the statutory means provided in this State for the enforcement of a judgment requiring the payment of money, C. S., 663, the decisions bearing upon the subject uniformly hold that the issuance of an execution does not prolong the life of a lien, nor stop the running of the statute of limitation, the bar of which is complete when the ten years have expired. *Lupton v. Edmundson, supra; Barnes v. Fort,* 169 N. C., 431, 86 S. E., 340; *Hyman v. Jones,* 205 N. C., 266, 171 S. E., 103.

In the light of these principles, it is clear that the present case fails to come within the savings clause contained in C. S., 614, by which the statute of limitation is tolled. The record fails to show that plaintiff has been restrained by any injunction, or other order, or by operation of any appeal, or by any statutory prohibition, from proceeding to enforce his rights under the judgment against defendants at any time within ten years from the date of the rendition of the judgment. And the fact that plaintiff elected to wait until more than nine years and nine months from the date of the rendition of the judgment had expired before putting in motion the statutory machinery for the enforcement of the lien of his judgment, and is then confronted with the provisions of C. S., 2591, made applicable in 1933 to sales under execution authorizing resales upon bids being raised, by reason of which final sale is not consummated until after the full ten years have expired, is not a restraint within the meaning of the provisions of C. S., 614. We must construe the statutes as they are written.

The conclusion thus reached makes it unnecessary to pass upon other questions debated, and we do not do so. But for reasons stated, the judgment below is

Reversed.